IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 3, 2021

**STATE OF TENNESSEE v. JERMAINE ELVEY CRAWFORD**

**Appeal from the Circuit Courts for Carroll County and Henry County**
**Nos. 15793, 14-CR-115     Donald E. Parish, Judge**

_____

**No. W2020-01203-CCA-R3-CD**

_____

Defendant, Jermaine Elvey Crawford, appeals from the revocation of his probationary sentences in Carroll County Circuit Court case 14-CR-115 and Henry County Circuit Court case 15793. By agreement between the parties, a combined hearing was held on the probation violation warrants in both cases. Defendant asserts that there was no substantial evidence that he violated his probation. Based on the record and the parties' briefs, we affirm the judgments of the trial courts.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Courts Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Kaylee N. Houston, Paris, Tennessee (on appeal); Stephanie J. Hale, Trenton, Tennessee (at trial), for the appellant, Jermaine Elvey Crawford.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Matthew Stowe, District Attorney General; and Rebecca D. Griffey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Procedural Background***

Defendant was indicted by the Carroll County Grand Jury in case number 14-CR-115 for one count each of first degree premeditated murder, aggravated assault in concert with two or more other persons, and reckless endangerment. On March 8, 2016, Defendant pleaded guilty to facilitation of second degree murder and was sentenced to ten years, suspended upon time served. The remaining charges were dismissed.

On October 17, 2016, a probation violation warrant was issued alleging that Defendant violated the terms of his probation by testing positive for marijuana and for owing $135.00 in supervision fees. Following a hearing, the trial court entered an order partially revoking Defendant's probation and reinstating supervised probation after time served.

On July 5, 2017, a second probation violation warrant was issued alleging that Defendant violated the terms of his probation by committing the offenses of possession of drug paraphernalia and possession of a Schedule VI controlled substance with intent to manufacture, sell or deliver and for owing $198.00 in supervision fees.

On November 6, 2017, Defendant was indicted by the Henry County Grand Jury in case number 15793 for one count of possession of half a gram or more of marijuana with intent to deliver. On November 13, 2017, Defendant pleaded guilty to the offense as charged and was sentenced to two years on supervised probation, to be served consecutively to Defendant's sentence in Carroll County case 14-CR-115.

Following a hearing on November 20, 2017, Defendant's probation in the Carroll County case was revoked and Defendant was returned to supervised probation after serving one year in custody. A written order was entered on December 13, 2017.

On November 18, 2019, a probation violation report was filed in the Henry County Circuit Court, alleging that Defendant violated the terms of his probation by failing to report to his probation officer in October and November, 2019, and by moving to New York. The report also alleged that Defendant owed $1,114.50 in fines and costs and $558.00 in supervision fees. A probation violation warrant was issued on November 25, 2019. On December 16, 2019, a probation violation report was filed in the Carroll County Circuit Court, alleging the same violations alleged in the Henry County report, and a warrant was issued.

On June 10, 2020, by agreement between the parties, a joint probation violation hearing was held in Henry County on both warrants. A written order revoking Defendant's probation in the Carroll County Circuit Court was entered on June 23, 2020. A written order revoking Defendant's probation in the Henry County Circuit Court was entered on August 6, 2020. It is from these orders that Defendant appeals.

***Revocation Hearing***

At the June 10, 2020 hearing, the trial court noted that, by agreement, it was combining two proceedings into one hearing in Carroll County case number 14-CR-115 and Henry County case number 15793.

Probation officer Michelle Wade was assigned to supervise Defendant's probation in both cases. Ms. Wade testified that Defendant's probation in the Carroll County case was revoked in 2016 for testing positive for marijuana and for "being behind on his [s]upervision [f]ees." She testified that during that time period, Defendant's employment history was "a little sketchy," but "[h]e later moved to Henry County where it got better." She recalled that Defendant worked at McDonald's for "a very long time, over a year," and later went to work at Taco Bell. Ms. Wade testified that a second revocation warrant was filed in Carroll County after Defendant was arrested on charges in Henry County. Defendant's probation was partially revoked, and Defendant was ordered to serve one year incarcerated. Ms. Wade testified that after his one-year revocation, Defendant had "no other violation[s]." She testified that Defendant "ha[d] not done real well on payment history, as far as fines and costs, and supervision fees. Other than that, he[] reported as he [wa]s supposed to. He[] passed all his drug screens. He[] kept employment, pretty well."

Ms. Wade testified, however, that Defendant "absconded from probation around October" of 2019. She testified that Defendant wanted to move to New York and had requested a transfer of probation, but his request was denied. Ms. Wade's last contact with Defendant was around September, 2019. She testified that before Defendant absconded, she "could always count on him" to report consistently. Ms. Wade described Defendant as "a likeable guy."

Regarding Defendant's attempt to have his probation supervision transferred to New York, Ms. Wade testified, "[d]ue to the distance, I knew it was going to be a difficult task for the powers above me to agree to that. . . ." She explained that "the first thing they will look at is his payments toward the court and his payments toward supervision fees. . . . "[w]hich ha[d] been behind." She advised Defendant to establish "a steady pattern" of payments before making the request. Defendant wanted to move to New York "[t]o see his children."

Ms. Wade did not know how much Defendant was getting paid for working at McDonald's and Taco Bell, but she assumed "probably, minimum wage." She testified that Defendant's payments were "sporadic" but agreed that Defendant "was making some type of payments."

Ms. Wade affirmed that the policy of the Department of Probation and Parole was to prohibit probationers from traveling out of state. She also affirmed that this was Defendant's first probation violation in the Henry County case and that since his positive

marijuana screen in 2016 and his 2017 guilty plea in the Henry County case, Defendant had reported consistently and passed all his drug screens.

Defendant testified that he "went to New York to visit [his] kids." He testified that he had three children, ages seven, eight, and thirteen, and that they lived in Olene and Buffalo. Defendant testified that when he first came to Tennessee, he did not know anyone and had no family here. He testified, "I pretty much built my life here in Paris. I met a woman. Fell in love. Got married." Defendant testified that he had "worked [his] way up" at McDonald's and at Taco Bell, and he had also worked at Hamilton and Ryker, at Briggs and Stratton, and at ICI. He explained, "I obtained a travel permit from Ms. Wade in order to go to Kentucky to work at Briggs and Stratton, and they transferred me from Briggs and Stratton to ICI, here in Paris. That was before McDonald's and Taco Bell. [Ever] since I've lived in Paris, I've been employed."

Defendant admitted that his fee payments were sporadic, but explained, "I did the best I could." He testified that he lost his job at ICI and started selling marijuana in 2017. Defendant was paying $650 per month in rent and had six stepchildren. He testified, "It was hard. So, I was just trying – just trying to take care of my family. I made the wrong decision. I made a bad decision and I got convicted for it. You know, I owned up to my responsibility for it." As a result of his marijuana conviction in Henry County, Defendant served an additional nine months on the Carroll County case. After his release, he returned to work at McDonald's and "tried to work it out with Probation to where [he] could get a permit to go see [his] children. [Defendant] hadn't seen [his] children since 2013 and it was 2018." He testified:

> And like, I mean it's hard when you've got your kids on the phone, and they feel like you don't love them, because you won't come to see them. You know, it's hard as a father that's used to doing for his children. That's used to being in his children's life, and – and it's hard on their mothers when they know that you're living with a woman, and helping her take care of her six (6) kids, but you ain't – you can't – you can't do for your own.
>
> So I tried to do it the right way, and I, you know, like I said, I had a lot of kids to deal with. You know, that's ten (10) kids. You know, we've got bills, rent. I'm working making minimum wage.

Defendant testified that he asked Ms. Wade for permission to go to New York on six or seven occasions, but she told him that he had to "catch [his] fees up." Defendant was paying child support for two of his children in New York, and he did not want to "catch a violation for [his] child support, because that's going to a whole other charge, too." Defendant testified,

- 4 -

When I was coming home with two-fifty ($250.00), my rent was six-fifty ($650.00). I have bills. I have rent. I've got four (4) kids in New York. I've got six (6) kids in the house. You know, I mean, it's hard in the house. So like I said, I got frustrated after a while and I just left. I wanted to see my kids.

Defendant testified that he left Tennessee "right before Christmas," and he was arrested in Pennsylvania in April. He testified that while he was in New York, he maintained employment. Defendant testified that he had "cooked professionally for over twenty (20) years." He testified, "I always try to keep a job. Like, you know, I'm not . . . a person that won't work."

The trial court noted that Defendant testified that he went to New York in December, but Ms. Wade testified that she last saw Defendant in September. When the trial court asked Defendant what happened in October and November, Defendant testified that he "ended up homeless." He testified, "I ended up losing . . . my place to stay, because I was staying with a female, and you know, that didn't work out. She put me out. And I didn't have anywhere to stay." Defendant testified that he stopped reporting because he "just got frustrated."

Defendant explained that if the trial court reinstated his probation, he had already lined up employment at McDonald's and Taco Bell, and he had a friend he could live with. He also said that his children's mothers had agreed to bring his children to visit him in Tennessee. Defendant admitted that he "did something stupid," but, he testified, it was "just about [his] kids."

At the conclusion of the hearing, the trial court first stated that its decision was not based on Defendant's failure to consistently make payments, clarifying, "while in a perfect world, . . . you should have made all those payments. That's not coming into my decision making process here today[.]" The court found that Defendant did not intentionally fail to make payments.

The trial court stated that the "more troubling issue" was Defendant's failure to report and absconding to New York. The court stated that it appreciated Defendant's candor and his admission of wrongdoing. The trial court explained its reasoning as follows:

I appreciate you being candid with me about, essentially, leaving Tennessee and going to be closer to your family in New York and in Pennsylvania. If your underlying conviction was only the conviction that I was considering in the Henry County matter, that being the drug conviction, I would accept your

- 5 -

explanation today, and there would be some sort of an additional partial revocation, but the bigger problem is the Carroll County [f]acilitation of [s]econd-[d]egree [m]urder, extremely serious.

And, of course, you'll – you'll remember that I was involved, in terms of being the judge presiding over that. So, I remember portions of that matter, and I just understand how serious it was. So, this being a third (3rd) violation, I just am compelled to find that you – that you violated your probation, and that the appropriate response is a revocation.

If that seems unduly harsh to you, I can appreciate your feeling that way, but I have to look at the bigger picture, in terms of what's not only fair to you, but what's fair to the community itself as well, and I'm coming down in that – in that way today. So, please prepare an order then, revoking his probation.

The trial court revoked Defendant's probation in the Carroll County case and ordered him to serve his ten-year sentence in confinement. The trial court also revoked Defendant's probation in the Henry County case and ordered him to served his two-year sentence in confinement.

## *Analysis*

On appeal, Defendant contends that the trial court abused its discretion "by fully revoking his effective 12-year sentence in his Carroll County and Henry County cases." Defendant argues that "[t]he evidence presented at the probation violation hearing was not substantial enough to support the trial court's full revocation of the Defendant's sentences." The State responds that the trial court properly revoked Defendant's probation.

A trial court has the discretion to revoke probation if it finds by a preponderance of the evidence that a defendant violated the conditions of probation. *See* T.C.A. §§ 40-35-310, -311(e); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). An abuse of discretion in revoking a defendant's probation occurs only where there is "no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. The trial court determines the credibility of witnesses in probation revocation hearings. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978)). Additionally, the trial court's factual findings carry the weight of a jury verdict on appeal. *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005) (citations omitted).

Upon finding that a defendant has violated the conditions of probation, the trial court is statutorily authorized to: "(1) order confinement; (2) order execution of the sentence as

- 6 -

originally entered; (3) return the Defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years." *State v. Brandon L. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014), *no perm. app. filed* (citing T.C.A. §§ 40-35-308(a), (c), -310, -311(e)(1); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)). In exercising its authority, a trial court has no obligation to provide a defendant already on probation "'a second grant of probation or another form of alternative sentencing.'" *State v. Tracy Arnold*, No. W2018-00307-CCA-R3-CD, 2018 WL 6266279, at *1 (Tenn. Crim. App. Nov. 30, 2018), *perm. app. denied* (Tenn. Nov. 30, 2018) (citation omitted).

The record shows that the trial court did not abuse its discretion by ordering Defendant to serve his sentences in confinement. Defendant was alleged to have violated his probation by failing to report to his probation officer and absconding to New York. He conceded at the hearing that he stopped reporting in October, 2019 and moved to New York in December of that year. He asserts, however, that "the reason for his absconding . . . was for the purpose of visiting with his children" and that his numerous requests to transfer "were denied based on seemingly financial reasons[.]"

The trial court had previously given Defendant the opportunity to continue on probation following his first two revocations, but Defendant admittedly violated the terms of his probation by failing to report and by absconding to New York. The court's decision to sentence Defendant to confinement after finding that he violated his probation was within its statutory authority. *See* T.C.A. §§ 40-35-308(a), (c); -310; -311(e)(1). We conclude that the trial court did not abuse its discretion and that Defendant is not entitled to relief.

CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE