IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2026 Session

**STATE OF TENNESSEE v. DENISHA SIMMONS**

**Appeal from the Criminal Court for Bradley County**
**Nos. 23-CR-432, 23-CR-433, 23-CR-434     Andrew M. Freiberg, Judge**

_____

**No. E2025-00487-CCA-R3-CD**

_____

The defendant, Denisha Simmons, appeals the order of the trial court revoking her probation and ordering her to serve her four-year sentence in confinement. Upon our review of the record, the parties' briefs, and oral arguments, we affirm the revocation and disposition of the defendant's probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Mitchell A. Raines, Franklin, Tennessee, for the appellant, Denisha Ann Simmons.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Attorney General; Stephen Hatchett, District Attorney General; and Ashley F. Zepeda, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On March 19, 2024, the defendant pled guilty to two counts of shoplifting property valued at $1000 or more but less than $2500 and one count of shoplifting property valued at $1000 or less. Pursuant to a plea deal, the defendant received an effective four-year sentence.[1] Per the terms of the plea agreement, the defendant was to serve the first two

---

[1] The defendant received consecutive sentences of two years for each of the convictions of shoplifting of property valued at $1000 or more but less than $2500, Docket Nos. 23-CR-432, -433. The defendant also received a sentence of eleven months and twenty-nine days for the conviction of shoplifting property valued at $1000 or less, which ran concurrently to Docket No. 23-CR-433.

years in the custody of the Tennessee Department of Correction with the remaining two years suspended to probation.

On October 3, 2024, a probation violation report was issued for the defendant in the above case. The report alleged that the defendant had failed to comply with the conditions of her probation by incurring new criminal charges. The violation report alleged that the defendant was arrested on July 31, 2024, in Hamilton County for one count of burglary and three counts of theft of property. The report also alleged the defendant had been arrested on September 22, 2024, in Sumner County for three counts of theft of merchandise valued over $1000. In addition, the report noted that the defendant had failed to make restitution payments to the victim in the underlying case, a requirement of her probation. The Tennessee Department of Correction recommended a capias be issued for the defendant.[2]

On March 31, 2025, a probation revocation hearing was held. As an initial matter, the defendant admitted to not paying restitution to the victim in the underlying case, thereby violating a condition of her probation.

The State presented the testimony of Charles Brock, the district manager of loss prevention for Food City. Mr. Brock was acquainted with the defendant because he had physically apprehended her on a previous occasion and "run into her multiple other times at other stores." Mr. Brock stated that on June 13, 2024, he encountered the defendant inside a new Food City location, walking with another female along an aisle near the front of the store. Because the defendant had been banned from all Food City locations, Mr. Brock approached the defendant, greeted her by name, and reminded her she was banned from all Food City locations. Mr. Brock told the defendant that she needed to leave the premises. Although the defendant stated she did not know she was banned, she ultimately complied.

After the defendant and her companion left the premises, Mr. Brock reviewed the security footage. On the footage, he observed the defendant take an item off a shelf and conceal it in her purse. The item was a "little trash receptacle that goes into a car cup holder." The defendant exited the store without paying for the item.

The defendant, testifying on her own behalf, claimed she had been mistakenly identified on four previous occasions. At first, the defendant testified that she did not know for whom she was being mistaken but stated, "I do know who I'm being mistaken for, but that's neither here nor there." The defendant elaborated that her daughter "looks" like her, but she was "not going to throw [her] child under the bus." In addition, the defendant

---

[2] The record does not establish the date a capias was issued or executed for the defendant.

stated that she had "records" establishing that she was at her place of employment on June 13, 2024.

Additionally, the defendant testified that she had been formally diagnosed with kleptomania and was in "active therapy." When questioned concerning her sixty-five prior convictions for theft-related crimes, the defendant responded that she had an "extenuous [sic] history of shoplifting charges." The defendant estimated that she had "probably" committed over a hundred thefts since she was a juvenile. She claimed that she was "working on writing a book dealing with the addiction of shoplifting." Despite her claim that she suffered from a "mental health issue," she maintained that the current charges were a result of mistaken identity.

After hearing the proof and reviewing the entire record, the trial court found the defendant admitted to violating the terms of her probation by failing to pay restitution as directed. In addition, the trial court explicitly accredited the testimony of Mr. Brock that he recognized the defendant due to his numerous past encounters with the defendant, reminded her that she was banned, and he observed the security footage of her taking an item and concealing it in her purse before leaving the store. The trial court also explicitly discredited the testimony of the defendant, finding that she was impeached by "the mountain and level of criminality." The trial court stated that, although the item taken had a nominal value, the defendant's ban from the store rendered her conduct "at a minimum burglary." Ultimately, the trial court found "well in excess of a preponderance of the evidence" that the defendant had violated the terms of her probation by committing a new criminal offense: felony burglary.

The trial court then turned to the second issue of the hearing: the disposition of the revocation. The trial court stated, "[it]'s supposed to be the least severe measure necessary to achieve justice proportional to a very poor supervision history or the criminal conduct at bar." The trial court also considered the defendant's long history of criminal conduct, the short length of time between the defendant's prior release from incarceration and recidivism, and that less restrictive measures had previously been applied unsuccessfully. Ultimately, the trial court concluded that revocation of the defendant's probation to serve "to be just" and "necessary."

On April 7, 2025, the defendant filed a pro se notice of appeal.[3]

---

[3] The defendant's motion was titled a "motion for appeal, appeal bond, ineffective counsel." Pursuant to an order from this Court on April 24, 2025, the filing was deemed a pro se notice of appeal.

*Analysis*

On appeal, the defendant argues the trial court erred by ordering her to serve the remainder of her four-year sentence in confinement. Specifically, the defendant contends the trial court abused its discretion by disregarding the defendant's medical diagnosis of kleptomania and probation's rehabilitative purpose. The State responds that the trial court acted within its discretion. After review, we agree with the State.

A trial court's decision to revoke probation is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A probation revocation proceeding ultimately involves a two-step inquiry. A trial court, upon finding by a preponderance of the evidence that a defendant violated the conditions of his probation must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." *Id.* at 753. Here, the defendant's sole issue on appeal is whether the trial court abused its discretion as it relates to the second-step: the disposition of the revocation.

When a defendant's probation is revoked, the trial court has discretionary authority to impose one of the following consequences: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period by up to one year for each violation of Code section 40-35-308(c)(1); or (4) return the defendant to probation on appropriate modified conditions. Tenn. Code Ann. §§ 40-35-308, -310, -311; *see Dagnan*, 641 S.W.3d at 756 (citing *State v. Beard*, 189 S.W.3d 730, 735 and n.2). While it is "not necessary for the trial court's findings to be particularly lengthy or detailed, sufficient reasoning must exist to promote meaningful appellate review." *Dagnan*, 641 S.W.3d at 759 (*citing State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2012)). Moreover, this Court has repeatedly held that "an accused, already on [suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Walden*, M2022-00255-CCA-R3-CD, 2022 WL 17730431 *4 (Tenn Crim. App. December 16, 2022) (quoting *State v. Brumfield,* No. M2015-01940- CCA-R3-CD, 2016 WL 4151178, at *8 (Tenn. Crim. App. Aug. 10, 2016) (citations omitted)).

Here, the trial court found that measures less restrictive than confinement had been applied unsuccessfully. The trial court stated that whether it was due to a "product of mental illness or just criminal desires," "nothing really has worked." Although the trial court's consideration of alternative options for the defendant was brief, the record reflects the trial court determined alternative consequences were no longer appropriate for the defendant, even if it did so implicitly. Contrary to the defendant's claim, our review of the record reveals that the trial court made a separate discretionary decision to impose

incarceration. Accordingly, we conclude the trial court did not err by ordering the defendant to serve the balance of her sentence in confinement.

The defendant argues that the trial court erred by failing to reinstate her to supervised probation with treatment conditions based upon her kleptomania diagnosis. Specifically, the defendant cites *State v. Downey* for the proposition that imprisonment of a person diagnosed with kleptomania did not serve the purposes of the 1989 Sentencing Act. *Downey*, No. 03C01-9611-CR-00416, 1997 WL 621333, at *4 (Tenn. Crim. App. Oct. 9, 1997). However, the defendant's application of that holding to the case at bar is flawed as the facts are remarkably divergent. In *Downey*, the defendant was initially sentenced to a misdemeanor conviction of theft of property valued at $500 or less. *Id.* at *1. At the sentencing hearing, the defendant's therapist testified that she had undergone years of treatment for kleptomania and that incarceration "won't stop the behavior, if anything it would enhance" her criminal behavior. *Id.* at *3. In addition, this Court concluded that the record failed to establish that the defendant had a "previous history of unwillingness to comply with the conditions of her sentence involving release into the community." *Id.* at *3. In fact, the record showed the defendant had successfully completed two prior probationary periods for shoplifting convictions. *Id.* It was based upon these "rather unusual facts of the case" that this Court concluded that incarceration would not service the principles of the 1989 Sentencing Act. *Id.* at*4.

Here, however, the defendant has already enjoyed the benefit of probation and, unlike the defendant in *Downey,* she did not complete that period successfully. Shortly after being placed on probation, the defendant amassed multiple new charges for theft. In addition, unlike the expert testimony in *Downey*, here, the defendant presented no evidence of her diagnosis. Other than her own testimony that she had been diagnosed with kleptomania, the record is void of any credible evidence upon which the trial court could have relied to consider alternative sentencing. Lastly, and perhaps most significantly, the defendant in *Downey* had two prior convictions for shoplifting in contrast to this defendant's sixty-five. Therefore, the trial court did not abuse its discretion by determining the defendant was not suitable to return to supervised probation based upon an unsubstantiated diagnosis of kleptomania. This argument is without merit.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the trial court's determination to revoke the defendant's probation and order her to serve the remainder of her sentence in confinement.

s/ *J. ROSS DYER*

J. ROSS DYER, JUDGE