# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville July 26, 2005

## STATE OF TENNESSEE v. KENNETH BEARD

### Direct Appeal from the Criminal Court for Davidson County
### No. 2001-I-817     J. Randall Wyatt, Jr., Judge

---

### No. M2004-02561-CCA-R3-CD - Filed October 11, 2005

---

The defendant, Kenneth Beard, entered a plea of guilty to rape, a Class B felony. The trial court imposed a Range I, eight-year sentence. Although the defendant was granted probation, the first year was intensely supervised and the entire term involved special conditions of release. After violating the terms of probation by testing positive for cocaine use and serving nine months in jail, the defendant was reinstated to probation. Shortly thereafter, another probation violation warrant was issued and the trial court required the defendant to serve an additional year in jail as a part of a split confinement sentence. Upon review after the one year period of incarceration, the trial court ordered execution of the original judgment, requiring service of the balance of the term in prison. The judgment of the trial court must be reversed and the cause remanded for service of the sentence on conditional probation.

### Tenn. R. App. P. 3; Judgment of the Trial Court Reversed and Remanded

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Emma Rae Tennent, Assistant Public Defender, Nashville, Tennessee (on appeal); Gary Tamkin and Diane McNamara, Assistant Public Defenders, Nashville, Tennessee (at trial), for the appellant, Kenneth Beard.

Paul G. Summers, Attorney General & Reporter; David E. Coenen, Assistant Attorney General; and Michael Rohling, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On September 4, 2001, the defendant, after being advised of the nature of the charge against him, agreed to be prosecuted upon the filing of an information and pled guilty to rape. See Tenn. Code Ann. § 39-13-503 (1997); see also Tenn. Code Ann. § 40-30-103 (1997). By plea agreement, the defendant was fined $25,000 and sentenced to eight years in the Department of Correction. The trial court granted probation subject to the traditional rules with the following special conditions: (1)

intensive probation during the first year; (2) sex offender registry and treatment; (3) no contact with the other charged defendants or the victim; (4) no contact with children; (5) alcohol and drug assessment and treatment, if necessary; and (5) testify truthfully in all cases regarding other charged defendants. In conjunction with the guilty plea, the defendant stipulated that in 1999, the victim, who was under thirteen years of age, had performed oral sex on him. He agreed that the acts occurred at the residence of the victim's uncle, William Douglas Zukowski, and in the presence of both Zukowski, apparently her custodian, and Raymond Andrew Hearst, who had also engaged in the sexual penetration of the victim. The record indicates that other adult individuals were indicted for similar acts against the victim. The defendant, who was sixteen years old at the time of the offense, was originally charged in juvenile court.

In 2002, the defendant violated the terms of his probation by testing positive for the use of cocaine. A warrant was issued and the trial court ordered the defendant to serve one year in the county correctional center, during which he was required to participate in the Lifeline Therapeutic Community Program. Approximately nine months later, when the defendant had successfully completed the program, the trial court reinstated probation.

On May 7, 2003, just over two months after the reinstatement of probation, a second violation of probation warrant was filed. The probation officer alleged that the defendant had violated the terms of his probation by missing a meeting with his officer without explanation and by failing to observe several of the special conditions of probation imposed as part of the plea agreement. It was alleged that the defendant had missed one of his weekly counseling sessions, had made contact with two of his co-defendants, had come into contact with his minor nephew, and had attended a narcotics anonymous meeting where teenagers, some of whom were under the age of eighteen, were present.

At the hearing, James Holder, the probation officer, confirmed that the defendant had missed an office visit on May 6 without offering any explanation. He testified that the defendant had also missed one of his weekly counseling sessions five days earlier. Holder produced a videotape indicating that the defendant had come into contact with his co-defendants. The officer stated that he had been to the residence of the defendant, who lived with his mother, on occasions when his minor nephew, six years old or less, was present. He also pointed out that the defendant had attended a counseling session where teenagers, some of whom were under eighteen years of age, were present.

On cross-examination, the officer acknowledged that the defendant had only missed one of approximately twelve appointments over a two-month period but pointed out the he had been late or had appeared at times other than scheduled on other occasions. The officer conceded that the defendant, age twenty at the time of the hearing, had maintained employment, had not been arrested, and had attended all other counseling sessions. He admitted that there were several adults, including adult counselors, present during the session at the narcotics anonymous meeting the defendant had attended.

Jeanie Beard, the defendant's mother, testified that the defendant resided with her. She explained that she had recently acquired temporary custody of her daughter's minor son and contended that the defendant had never been left with the child unsupervised.[1] She stated that the defendant, who did not have a driver's license and did not drive, required assistance to attend his probation meetings and counseling sessions. Ms. Beard verified that the defendant, while lacking transportation, had been able to maintain employment since his release. She suggested that the defendant be moved to a halfway house as a means of complying with the probationary conditions. She stated that she had contacted the Lifetime Recovery Program in Lavergne and learned that they had available space for the defendant. Ms. Beard insisted that the defendant had not been in trouble since his release and had not used illegal drugs.

The defendant, while acknowledging that he had missed a meeting with his probation officer, explained that he did not have a driver's license and had no alternative transportation on that date. He confirmed that he had attended counseling sessions once a week since he had been placed back on probation, missing only on the one occasion when he "didn't have a ride." He contended that he attended the Cumberland Heights Narcotics Anonymous program only because it was within walking distance from his residence and claimed that he was unaware that minor teenagers were present. He stated that there were sixty to sixty-five people in attendance, including counselors and older adults. He asserted that no more than five present appeared to be teenagers, all near the age of eighteen. The defendant claimed that when he learned that one of those in attendance was a minor, he avoided returning to those meetings. He expressed his willingness to move to a halfway house in order to avoid contact with his minor nephew, who had been placed in the custody of Ms. Beard because of the living circumstances of his sister.

On cross-examination, the defendant acknowledged that he had been videotaped in the presence of his co-defendants. He explained that he lived only a block away from the two individuals and that, while it was difficult to avoid contact, it was nevertheless a bad decision on his part to be in their company. At the conclusion of the hearing, the trial court determined that the defendant had violated his probationary terms, ordered him to serve one year in the county correctional center, and otherwise ruled as follows:

> And then, if you come up with some kind of program that it really looks like it might have some . . . possible success, then I'll consider it sometime later. But I'm not putting this man back out . . . where he just wanders around, does what he pleases, makes bad mistakes, stupid moves . . . . He's in violation of . . . probation. And the sentence is going to be revoked, but I am going to give him split confinement, where he goes to CCA rather than the penitentiary for a year and then we'll look at it at that time . . . .

(emphasis added).

---

[1] The record describes the child as being between four and six years of age.

A little over a year later, during which time the defendant was incarcerated in the local correctional center, the trial court heard additional testimony. Ms. Beard, the defendant's mother, testified that arrangements had been made for the defendant to reside with his sister in an apartment in Hermitage. She confirmed that there were no children at the residence and no schools in the neighborhood. Ms. Beard stated that the defendant had always been able to work and that arrangements had been made for him to participate in the drug counseling program while on probation.

Stephanie Krivcher, who was directed by the court to review the history of the case and develop a plan of rehabilitation for the defendant, testified that she had met with the defendant in August of 2004 to discuss the nature of the crime and to develop his plan of treatment while on probation. She expressed concern about whether the defendant was "forthcoming" in regard to the facts of the case and whether he knew "the [legal] definition of rape [which included] oral sex." She concluded, "I just think there should be a little more acknowledgment of what happened," implying that, in her opinion, the defendant had not fully appreciated that under law oral sex was as serious as vaginal rape. Ms. Krivcher confirmed that her plan did not address sex offender treatment because she had "been unable to contact the treatment providers . . . [a]nd I would have like to have been able to see how he did." She admitted that the defendant had "completed a lot of good things" while he had been on probation and recommended electronic monitoring if he was placed on probation. She also recommended against approval of the defendant's sharing a residence with his sister, at least on a long term basis, because his sister was pregnant at that time. It was her recommendation that the better alternative would be a halfway house for sex offenders.

The defendant, in response to the testimony by Ms. Krivcher, expressed his remorse for the crime, which had occurred some five years prior to the hearing, as follows:

> I feel I really damaged this little girl's life. I really did . . . . I am not trying to . . . justify . . . , or anything like that. Well, it was wrong. And I'll be damaged with it the rest of my life. And I know she will be damaged with it, too . . . .

While re-asserting that he did not have vaginal sex with the victim, the defendant again acknowledged that he had committed oral sex with her that, he understood, qualified as rape under the law. The defendant testified that he had no father and that the therapy throughout his term of incarceration had "touched on a lot of [his] unresolved issues."

On cross-examination, the defendant admitted that he had been videotaped in the presence of two of his co-defendants prior to the hearing one year earlier. While maintaining that he had attended numerous counseling sessions during his probation, he conceded that he had missed a visit with his probation officer and also missed one counseling session during the months after his release from the correctional center. He denied having any knowledge that there would be underage teenagers at the narcotics anonymous meeting held during that period.

-4-

At the conclusion of the hearing, the trial court reiterated the circumstances of the crime and expressed particular concern that the minor victim had been "outrageously violated and abused by her own family, her uncle and different . . . people that knew her and had access to her." The victim was described as having limited mental capacity. The trial court pointed out that the defendant, because of his youth, had been granted the largesse of a probationary sentence which had been continued even after he tested positive for cocaine usage. The trial court expressed regret that it had delayed making a decision on whether to send the defendant to prison before determining that because of the "facts and circumstances of this offence . . . [that] even the slightest deviation" from the probationary rules merited revocation and execution of the original judgment. It determined that the defendant, having made a distinction between oral rape and vaginal rape, had not grasped "the seriousness of what happened to this young girl."

In this appeal, the defendant initially claims that the trial court erred by imposing a condition precedent to probation after the 2003 revocation hearing in which it ordered a sentence of split confinement. He argues that the amended judgment, which provided for a term of an additional one year in the correctional center but required him to return to the trial court for a status review, "to see if the full [prison] sentence should be put into effect," was not authorized by law. As support of his argument, the defendant cites Tennessee Code Annotated section 40-35-307(b)(1), which provides that when probation is coupled with periodic confinement, "[t]he total number of months or days to be served in periodic confinement . . . shall not exceed one (1) year or the maximum term authorized for the offense, whichever is less." Tenn. Code Ann. § 40-35-307(b)(1) (2003). In the alternative, the defendant argues that the trial court abused its discretionary authority by revoking probation based upon the facts and circumstances of the original offense. In support of this argument, the defendant cites State v. Stubblefield, 953 S.W.2d 223, 224 (Tenn. Crim. App. 1997), a case in which this court ruled that trial courts "should not base revocation of a . . . suspended sentence on prior criminal acts that were known to it at the time it imposed the . . . sentence." The rationale for the decision, argues the defendant, was that the trial court should consider those acts only in the imposition of the original sentence. The defendant argues that the trial court acted arbitrarily by rejecting the probationary treatment plan offered by the corrections officer at the final hearing.

Our general law provides that a trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e) (2003); Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). On appeal, a revocation will be upheld absent an abuse of discretion. In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated his probation. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Relief can be granted only when "'the trial court's logic and reasoning [were] improper when viewed in light of the factual circumstances and relevant legal principles involved.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

In probation revocation hearings, the credibility of the witnesses is for the determination of the trial judge, who is in the best position to observe witness demeanor. Bledsoe v. State, 215 Tenn. 553, 560, 387 S.W.2d 811, 814 (1965); Delp, 614 S.W.2d at 398. On appellate review, the trial judge's findings in probation revocation proceedings carry the weight of a jury verdict. State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994); Delp, 614 S.W.2d at 398; Carver v. State, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978).

In this case, the real issue is whether the trial court properly ordered the defendant to serve the balance of his original eight-year sentence in the Department of Correction. It is our conclusion that because the defendant had been held in violation of the terms of his probation and had been sentenced to split confinement in the local correctional facility, the trial court lacked authority to sentence the defendant to the Department of Correction absent any new violation of probation. It is our further conclusion that even if the trial court had the authority to conduct a status review after revocation and a one-year period of incarceration in the local facility, it placed too much emphasis on the circumstances of the crime and exceeded its discretionary authority by ordering a prison sentence.

The revocation of probation is governed by Tennessee Code Annotated sections 40-35-310 and 311. When the defendant has violated the conditions of his probation, the trial court has the authority to revoke the probation and, among other alternatives, order the execution of the original judgment. Tenn. Code Ann. § 40-35-311 (2003). Tennessee Code Annotated section 40-35-310 provides as follows:

> The trial judge shall possess the power, at any time within the maximum time which was directed and ordered by the court for such suspension, after proceeding as provided in § 40-35-311, to revoke and annul such suspension, and in such cases the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension, and shall be executed accordingly . . . .

Tenn. Code Ann. § 40-35-310 (2003).

In State v. Hunter, 1 S.W.3d 643 (Tenn. 1999), our supreme court ruled that the trial court had three alternatives after concluding that the defendant had violated the terms of his probation: "(1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the remaining probationary period for a period not to exceed two years." Id. 648.[2]

---

[2] Another option, as described in Tennessee Code Annotated section 40-35-308(b), is for the court to impose conditions of supervision more onerous than the original probationary rules.

At the conclusion of the probation violation hearing in 2003, the trial court revoked probation and ordered incarceration. By authority of Tennessee Code Annotated section 40-35-306, the trial court imposed a sentence of confinement in the local correctional center of one year:

> (a) A defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse, with probation for a period of time up to and including the statutory maximum for the class of the conviction offense.
> (b) <u>A violation of the terms of probation or the rules of the institution where the defendant is confined shall authorize the court to revoke the sentence of split confinement and impose a sentence in the local jail or workhouse</u> or . . . in the department of correction. Such imposed sentence shall not exceed the remainder of the full sentence.[3]
> (c) At any time during the period of continuous confinement ordered pursuant to this section, the defendant may apply to the sentencing court to have the balance of the sentence served on probation supervision. Such application may be made at no less than two month intervals.

Tenn. Code Ann. § 40-35-306 (2003) (emphasis added).

At the subsequent hearing on July 8, 2004, there was no evidence indicating that the defendant had been guilty of any additional violations of the terms of his probation during the period of his confinement. The purpose of the hearing was to review whether to consider an alternative plan of probation or order the execution of the eight-year prison term.

A number of cases from this court have held that trial courts have the discretionary authority upon the revocation of probation to impose something less than the original sentence, depending upon the circumstances of the case. See, e.g., <u>State v. Troy McLemore</u>, No. 03C01-9709-CC-00406 (Tenn. Crim. App., at Knoxville, July 28, 1998). Upon a finding that the defendant has violated the conditions of probation and suspension, trial courts "shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with section 40-35-310," implying lesser alternatives to a prison sentence. Tenn. Code Ann. § 40-35-311(e) (2003); see also, <u>State v. Marty Miller</u>, No. 03C01-9602-CC-00056 (Tenn. Crim. App., at Knoxville, Mar. 4, 1997); <u>State v. Melvin Griffin</u>, No. 01C01-9503-CC-00090 (Tenn. Crim. App., at Nashville, Nov. 16, 1995).

---

[3] Although one serving a sentence of three years or less (and six years or less in a county having a population not less than 477,811 in the 1980 census) may not be sentenced to the Department of Correction if the county has a contract with the department, there is not authority for a sentence over six years to be served in a local jail or workhouse. See Tenn. Code Ann. §§ 40-35-104, -212.

In State v. Robert M. Bass, No. M2003-01124-CCA-R3-CD (Tenn. Crim. App., at Nashville, Apr. 6, 2004), this court defined the extent of the authority of the trial court, after revocation of a community corrections sentence, to impose incarceration to a local correctional facility:

> [I]f the trial court opts to allow a defendant to continue serving in the community corrections program despite a violation, then it may impose, as a condition, additional requirements, including a period of incarceration. This is authorized because the trial court "retains the authority to alter or amend at any time the length, terms or conditions of the sentence imposed." Tenn. Code Ann. § 40-36-106(e)(2). However, in the event that the trial court imposes incarceration as a condition, the period of confinement may not exceed one year.

Id., slip op. at 3 (emphasis added) (citing State v. Jimmy D. Johnson, No. 03C01-9602-CC-00062 (Tenn. Crim. App., at Knoxville, Oct. 16, 1997)). In Bass, this court determined that the one year limit was derived from Tennessee Code Annotated section 40-35-306, the statute authorizing a sentence of split confinement of up to one year in jail followed by a period of probation.

Further, it is not permissible for trial courts to base revocation on criminal acts that were known at the time probation was granted. In Stubblefield, this court confirmed that proposition of law. Stubblefield, 953 S.W.2d at 226; see State v. Shannon Lee Beckner, No. 923 (Tenn. Crim. App., at Knoxville Apr. 2, 1991). Other jurisdictions have held that trial courts, which have knowledge of the defendant's prior criminal conduct and then choose to grant probation, should not be allowed to base a subsequent revocation upon that same criminal conduct. See, e.g., Swope v. Musser, 223 Kan. 133, 573 P.2d 587 (1977). While the trial court was understandably sympathetic to a particularly vulnerable victim and justifiably indignant with the circumstances of the crime, our law precludes consideration of those factors once the original punishment is imposed.

In this instance, the trial court had the authority to revoke probation and could have ordered the execution of the original sentence at the conclusion of the 2003 hearing. The state had established by a preponderance of the evidence that the defendant had violated the terms of his probation. The trial court so found. When the trial court ordered a term of split confinement in the local correctional facility, it chose one of its three options as outlined in Hunter. In our view, however, there was no authority, statutory or otherwise, for the trial court to incarcerate the defendant in the local facility in excess of one year and, absent additional violations of the probationary terms, no authority to review the sentence, fourteen and sixteen months later, and then order the execution of the original judgment. As indicated, there was no proof of additional violations. Punishment had already been imposed for the previous, adjudicated violations through the additional one-year term in the correctional center. Of equal importance is that the trial court based its order requiring the execution of the original judgment primarily upon the facts and circumstances of the crime. As stated, that is not permissible under our case law and qualified as arbitrary under the circumstances.

The judgment of the trial court must be reversed, the cause remanded, and the defendant must be returned to probation in accordance with probationary terms. Any violation will subject the defendant to the execution of the original judgment.

_____
GARY R. WADE, PRESIDING JUDGE