FILED

03/04/2022

Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
December 1, 2021 Session Heard at Columbia[1]

## STATE OF TENNESSEE v. CRAIG DAGNAN

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Marion County
No. 9885v5   Justin C. Angel, Judge**

_____

### No. M2020-00152-SC-R11-CD

_____

This appeal concerns the revocation of a criminal defendant's probation. We granted Defendant's application for permission to appeal to consider whether revocation proceedings are a one-step or two-step process on the part of the trial court and the appropriate appellate standard of review to be employed in reviewing such determinations. Defendant in this case pleaded guilty to theft of property over $1,000 but less than $10,000 and received a six-year sentence, which the trial court suspended to supervised probation. A series of revocation proceedings ensued. At Defendant's fifth and final revocation hearing, the trial court fully revoked his probation. Defendant took issue with the consequence imposed for his probation violation; however, the Court of Criminal Appeals found no abuse of discretion on the part of the trial court and affirmed its decision. Judge Timothy L. Easter filed a separate concurring opinion in which he emphasized his belief that a trial court, after it has determined probation should be revoked, is not statutorily required to hold an additional hearing or make any additional findings to determine the manner in which the original sentence should be served. We granted Defendant's application for permission to appeal. While we do not agree with Defendant that the trial court abused its discretion in ordering him to serve the balance of his six-year sentence in prison, we do take this opportunity to clarify and bring uniformity to the standards and principles applied by the trial courts and appellate courts in probation revocation proceedings. We conclude that a probation revocation proceeding ultimately involves a two-step inquiry. A trial court, upon finding by a preponderance of the evidence that a defendant violated the conditions of his or her probation, must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation. On appeal, the appellate court must review both decisions separately for abuse of discretion. More specifically, if the trial court has properly placed its findings on the record, the

---

[1] Oral argument was heard in this case on the campus of Columbia Central High School in Columbia, Tennessee, as part of the S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

standard of review for probation revocations is abuse of discretion with a presumption of reasonableness. Considering this Court's prior opinions establishing the appellate standard of review of a trial court's sentencing decisions, we expressly extend the same principles to appellate review of a trial court's decision to revoke probation. Because we conclude that the trial court did not abuse its discretion in Defendant's case, we affirm the decision of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

ROGER A. PAGE, C.J., delivered the opinion of the Court, in which SHARON G. LEE, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Brennan M. Wingerter, Assistant Public Defender – Appellate Director, Tennessee District Public Defenders Conference; B. Jeffery Harmon, District Public Defender; and Norman Lipton, Assistant District Public Defender, for the appellant, Craig Dagnan.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Benjamin A. Ball, Senior Assistant Attorney General; Ronald L. Coleman, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Sherry Shelton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. FACTUAL & PROCEDURAL BACKGROUND

In July 2014, Craig Dagnan ("Defendant") was accused by his landlord, Robert E. Turner, of stealing two of the landlord's firearms and several of his tools. The total value of the property was estimated at just over $1,000. A Marion County Grand Jury returned an indictment against Defendant, charging him with theft of property over $1,000 but less than $10,000, a Class D felony at the time of the offense. In January 2015, Defendant pleaded guilty as charged and received a six-year sentence as a Range II offender, with five years, six months, and nine days suspended to supervised probation.[2] The trial court also ordered him to pay $1,250 in restitution, to complete 100 hours of community service, and to have no contact with the victim.

Five separate revocation proceedings followed Defendant's original sentencing hearing. Defendant's first probation violation occurred four months later. In May 2015, a

---

[2] At that time, Defendant had served five months and twenty-one days in confinement. Thus, the trial court's probation order suspended the balance of his six-year sentence.

petition to revoke probation was filed against Defendant alleging that he had failed to pay his court-ordered restitution. Defendant failed to appear at the initial hearing on the matter and was thereafter arrested. At a later probation revocation hearing, the trial court found that Defendant had violated the conditions of his probation and partially revoked his probation to serve ninety days in local confinement.

Defendant incurred his second violation later that same year. In October 2015, Defendant failed a drug screen by testing positive for methamphetamine and again had failed to pay restitution. The trial court issued a summons, but according to Defendant's probation supervisor, he failed to report as directed. After a hearing in January 2016, the trial court found that Defendant had violated the terms of his probation and partially revoked his probation to serve eight months in local confinement.

In May 2018, Defendant was the subject of a third probation proceeding. His probation officer sought to revoke Defendant's probation because of several alleged violations, including failing to abide by his curfew, leaving the state without permission, incurring a new criminal charge—driving with a suspended license—in Georgia, and failing to report the new charge. Defendant failed to appear at the revocation hearing and was later arrested. The trial court subsequently entered an order finding that Defendant had violated the conditions of his probation and partially revoking his probation to serve 120 days in confinement. The court ordered Defendant to attend an anger management course and prohibited him from driving without a valid license as additional probation conditions.

In November 2018, the trial court issued a warrant based on the probation supervisor's affidavit alleging, for a fourth time, that Defendant had violated the terms of his probation. The affidavit stated that Defendant failed a drug screen, failed to abide by his curfew, failed to attend court-ordered anger management classes, and failed to report his change of residence. After a hearing in January 2019, the trial court entered an order partially revoking Defendant's probation to serve eleven months and twenty-nine days in confinement. The court indicated in its written order that it "may consider a furlough into a long-term inpatient [alcohol and drug] treatment."

The following month, the trial court granted the furlough and allowed Defendant to be released from jail to the Freedom House Ministry for treatment. Completing treatment would entitle Defendant to receive day-for-day credit toward his jail sentence. Defendant signed the order and, by doing so, agreed to certain conditions of the furlough. Notably, the order required Defendant to report back to the Marion County Jail within four hours if he left the treatment facility for any reason prior to completion of the program.

The present appeal stems from Defendant's fifth probation violation. In June 2019, the trial court issued a warrant based on another affidavit claiming that Defendant had violated the terms of his probation. The affidavit stated that Defendant had absconded after

failing to complete alcohol and drug treatment at Freedom House Ministry in April 2019. In addition, Defendant was charged in Georgia with misdemeanor failure to appear. He also allegedly failed to pay supervision fees, court costs, and/or fines, and failed to report his arrest. Defendant was apprehended in Georgia on June 22, 2019, and was later charged with escape.

The revocation hearing concerning Defendant's most recent alleged violations took place on December 16, 2019. Defendant's supervising officer, Courtney Shelor, testified that she was informed that Defendant "was picked up on a new charge in Dade County, Georgia . . . [when he] was suppose[d] to have been in Freedom House Ministries rehab." Ms. Shelor explained that if Defendant left the treatment facility, he was supposed to report to the jail or contact her. She testified that Defendant never contacted her, but when she contacted Freedom House Ministries, the director informed her that Defendant had been dismissed. The State then produced a letter from the treatment facility confirming that Defendant had been discharged.

Next, Marion County Sheriff's Department employee, Brittany Ables, testified that she received a telephone call from Freedom House Ministries in April 2019 informing the department that Defendant was being discharged. Ms. Ables spoke to Defendant and told him that because he had been furloughed into the treatment facility, he was required to report back to jail. She advised him to stay at the facility until an officer could pick him up, but Defendant left before an officer arrived.

The defense called the director of operations for Mountain Movers Addiction Recovery, Jason Lee Skinner, to testify concerning his treatment facility's willingness to accept Defendant into their rehabilitation program. Mr. Skinner opined that Defendant was wrongfully discharged from Freedom House Ministries, a program with which Mr. Skinner was also associated.

At the conclusion of the hearing, the trial court explained that it was conducting a two-step analysis. The court first found that Defendant violated his probation by failing to report back to jail following his discharge from the treatment facility and absconding. As for the second consideration, based on the evidence presented at the hearing and numerous factors including Defendant's character, prior criminal history, mental health and addiction, and the nature of the offense, the court concluded that the appropriate consequence for his violation was to fully revoke probation. The court emphasized that, regardless of whether he was properly discharged from the treatment facility, Defendant knew that he was obligated to report back to jail following his departure and failed to do so. Notably, at the conclusion of the hearing, the court specifically stated as follows:

> Mr. Dagnan, I really only have one option at this point just based upon the
> criminal history and all the chances that you've been given. At this point[,] I

really have no choice but to deny any possibility of probation and just revoke you to serve your sentence in full in the Tennessee Department of Correction[].

Thus, the trial court ordered the defendant to serve the remainder of his six-year sentence in the Tennessee Department of Correction.

Defendant appealed the consequence imposed for his violation, but the Court of Criminal Appeals affirmed the decision of the trial court, concluding that the trial court had not abused its discretion in fully revoking Defendant's probation and ordering him to serve the balance of his sentence. *State v. Dagnan*, No. M2020-00152-CCA-R3-CD, 2021 WL 289010, at *2-*3 (Tenn. Crim. App. Jan. 28, 2021), *perm. app. granted*, (Tenn. Apr. 7, 2021). Judge Easter filed a separate concurring opinion. *Id.* at *3 (Easter, J., concurring). He explained:

> I concur fully with the conclusion reached by the majority that there was overwhelming evidence to support the trial court's decision to revoke Defendant's probation and to order Defendant to serve the balance of his six-year sentence in incarceration. I write separately to simply express my belief that once a determination is made that a defendant has violated the conditions of his or her probation, neither an additional hearing nor any additional findings are statutorily mandated of a trial court to determine the manner in which the original sentence should be served. Thus, there is no opportunity for an abuse of discretion when a "second exercise of discretion" is not required by either sections 40-35-310 or 40-35-311 of Tennessee Code Annotated.

> By taking this position, I do not mean to suggest that a trial court has unfettered discretion to do as he or she pleases after a probation violation is found. Furthermore, I am aware that the practice of having an additional hearing to assist the trial court in reaching the ends of justice is commonplace in Tennessee trial courts. I do not believe such inquisition is wrong or ill-advised. Every circumstance is different and every defendant's achievements and failures are noteworthy. I simply just do not see that the statutes mandate such an additional hearing.

*Id.* (footnote omitted).

We granted Defendant's ensuing application for permission to appeal.

## II. ANALYSIS

Probation revocation is governed primarily by Tennessee Code Annotated sections 40-35-310 and -311 (2014).[3] Pursuant to section 40-35-310, trial courts "possess the power, at any time within the maximum time that was directed and ordered by the court for the suspension, after proceeding as provided in § 40-35-311, to revoke and annul the suspension." Tenn. Code Ann. § 40-35-310(a). Section 40-35-311 outlines the procedure the trial court must follow in probation revocation proceedings. It provides:

> Whenever any person is arrested for the violation of probation and suspension of sentence, the trial judge . . . shall, at the earliest practicable time, inquire into the charges and determine whether or not a violation has occurred and, at the inquiry, the defendant must be present and is entitled to be represented by counsel and has the right to introduce testimony in the defendant's behalf.

*Id.* § 40-35-311(b).

"[A] trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release." *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005) (citing Tenn. Code Ann. § 40-35-311(e)). The statutory provisions in effect at the time of Defendant's revocation hearings allowed a trial court, after finding a defendant had violated probation, to impose one of several alternative consequences: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period by up to two years; or (4) return the defendant to probation on appropriate modified conditions. *See Beard*, 189 S.W.3d at 735 and n.2 (quoting *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)); Tenn. Code Ann. §§ 40-35-308, -310, -311. "If the trial judge does revoke the defendant's probation and suspension, the defendant has the right to appeal." Tenn. Code Ann. § 40-35-311(e)(2); Tenn. R. App. P. 3(b). "On appeal, a revocation will be upheld absent an abuse of discretion." *Beard*, 189 S.W.3d at 735.

To be clear, on appeal in this case, Defendant concedes that the trial court properly revoked his probation; however, he argues that after revoking probation, the trial court abused its discretion by ordering him to serve the balance of his sentence in the Tennessee Department of Correction. He also claims that the Court of Criminal Appeals erred in its review of the trial court's decision. Moreover, while Defendant is certainly concerned about the result in his case, he further takes aim at the practices of both trial courts and appellate courts in probation revocation proceedings in Tennessee courts collectively.

---

[3] Multiple changes were made to these two statutory sections effective July 1, 2021. *See* Tenn. Code Ann. §§ 40-35-310 to -311 (2021). Those changes do not affect the issues before the Court.

Defendant first expresses concern that there is no requirement for a trial court to place its findings and reasoning on the record when making a probation revocation decision. He argues that appellate review is "meaningless" if an appellate court is unable to determine from the record if the trial court acted improperly. As for the appellate courts, Defendant argues that some panels of the Court of Criminal Appeals correctly recognize that probation revocation involves separate exercises of discretion as to whether probation should be revoked and the consequence of the violation and apply a two-step analysis. *See, e.g.*, *State v. Fulton*, No. W2019-02269-CCA-R3-CD, 2020 WL 5944230, at *1-*2 (Tenn. Crim. App. Oct. 6, 2020); *State v. Amonette*, No. M2001-02952-CCA-R3-CD, 2002 WL 1987956, at *3-*4 (Tenn. Crim. App. Aug. 29, 2002). However, according to Defendant, other panels of the Court of Criminal Appeals apply a one-step analysis, which combines the trial court's decision to revoke probation with its decision concerning the consequence of the violation. *See, e.g.*, *State v. Kemp*, No. E2019-01784-CCA-R3-CD, 2020 WL 4193701, at *2 (Tenn. Crim. App. July 21, 2020); *State v. Pulliam*, No. E2018-00434-CCA-R3-CD, 2019 WL 1753059, at *3 (Tenn. Crim. App. Apr. 17, 2019). Thus, the appellate court affirms the order revoking probation so long as there is evidence to support the violation itself without reviewing the second discretionary decision separately. He asserts that the appellate courts in these cases are operating as if the trial court can never abuse its discretion so long as it selects one of the statutorily available consequences for a probation violation, resulting in nearly unfettered discretion on the part of the trial court in revoking probation.

Our review of recent cases involving appeals of a trial court's decision to fully revoke probation leads us to agree that clarification is needed. We conclude that probation revocation is a two-step consideration on the part of the trial court. *See* Tenn. Code Ann. §§ 40-35-308, -310, -311. The first is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation.[4] This is not to say that the trial court, having conducted a revocation hearing, is then required to hold an additional or separate hearing to determine the appropriate consequence. The trial courts are required by statute to hold a revocation hearing. *Id.* § 40-35-311(b). However, there is no such requirement in the statutes or case law for an additional hearing before deciding on a consequence, and we decline to impose one. Defendant agrees that requiring a separate hearing solely to determine the consequence for violating probation is not necessary and would be too great of a burden on the trial courts. Still, we emphasize that these are two distinct discretionary decisions, both of which must be reviewed and addressed on appeal. Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden.

---

[4] We reiterate that as a prerequisite to deciding to revoke probation, the trial court must determine whether the preponderance of the evidence at the revocation hearing establishes that the defendant violated the conditions of his or her release. *See Beard*, 189 S.W.3d at 734-35 (citing Tenn. Code Ann. § 40-35-311(e)).

Concerning the standard of appellate review, the parties agree and the case law is clear that probation revocation decisions are reviewed for abuse of discretion. *See, e.g.*, *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007) (citing *State v. Harkins,* 811 S.W.2d 79, 82 (Tenn. 1991)); *see also State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) ("A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party.").

Still, we are inclined to expound upon that standard in light of Defendant's persuasive arguments pertaining to the importance of trial courts' factual findings. Defendant concedes that neither the statutes nor case law requires trial courts to place additional factual findings on the record in a revocation hearing, but he argues that such findings are essential to facilitate meaningful appellate review of the trial court's discretionary decision to revoke probation and impose a consequence. Indeed, how could an appellate court determine if the trial court has abused its discretion if it has no insight on the reasons or factors considered? *See Amonette*, 2002 WL 1987956 at *4 ("The record does not reflect . . . whether the court considered any facts relative to the defendant['s] . . . case, such as the court's perception of the defendant's amenability to rehabilitation, sincerity, and the like. Without any such findings in the record, we are unable to know whether the court's decision was a conscientious and intelligent one based upon the facts of the case.").

With these considerations in mind, we turn our attention to the standard of appellate review that this Court has, in prior opinions, articulated to be applied in appeals of a trial court's sentencing order. In the context of sentencing decisions, this Court has determined that it is appropriate for appellate courts to review trial court determinations for abuse of discretion *with a presumption of reasonableness*. *See State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) (adopting "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act"); *State v. Caudle*, 388 S.W.3d 273, 278 (Tenn. 2012) (extending the same standard to review of alternative sentencing determinations); *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013) (extending the same standard to review of consecutive sentencing determinations); *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) (extending the same standard to review of judicial diversion decisions).

As for factual findings, the *Bise* Court noted that "appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence." *Bise*, 380 S.W.3d at 705 n.41. It described such findings as "critical" to ensuring fair and consistent sentencing as "the trial court is in a superior position to impose an appropriate sentence and articulate the reasons for doing so." *Id.*; *see also Amonette*, 2002 WL 1987956 at *4 ("[T]he lower court is the proper entity to make appropriate factual

findings regarding the believability and reliability of the witnesses' testimony, and ultimately, to rule upon the defendant's bid for further probation."). The *Pollard* case further emphasized that, in order for the presumption of reasonableness to apply on appeal, the trial court must place its reasoning on the record. *Pollard*, 432 S.W.3d 862 ("So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal."). Explaining the *Bise* decision, the *Pollard* Court noted: "The underlying principle, of course, is that the trial court must be afforded broad discretion in its sentencing decisions and the presumption of reasonableness will apply unless the trial court fails to address on the record the principles and purposes of our Sentencing Act." *Id.* at 861 (citing *Bise*, 380 S.W.3d at 709-10).

We expressly extend the same principles to appellate review of a trial court's decision to revoke probation and the consequence of that revocation. On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record. It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision.[5] *See Bise*, 380 S.W.3d at 705-06. "This serves to promote meaningful appellate review and public confidence in the integrity and fairness of our judiciary." *King*, 432 S.W.3d at 322. When presented with a case in which the trial court failed to place its reasoning for a revocation decision on the record, the appellate court may conduct a de novo review if the record is sufficiently developed for the court to do so, or the appellate court may remand the case to the trial court to make such findings. *See King*, 432 S.W.3d at 327-28.

Now that we have taken the opportunity to clarify and give uniformity to the standard and principles applicable to trial courts in probation revocation proceedings and to appellate courts in reviewing those decisions, we turn our attention specifically to Defendant's case. After reviewing the record, we note that the trial court sufficiently recorded the facts that it considered and its reasoning for fully revoking Defendant's probation. The transcript of the revocation hearing includes six pages of oral findings by the trial judge. The trial court considered Defendant's repeated violations, his addiction, and the nature of his most recent violation. It noted that, regardless of whether Defendant

---

[5] Relevant considerations might be, but are certainly not limited to, the types of things the trial court considered in this case: the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character. We recognize, however, that consideration of past criminal history is only appropriate in the second part of the two-step analysis. *See State v. Fleming*, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *3 (Tenn. Crim. App. Dec. 26, 2018) ("A trial court may not revoke probation based on past criminal acts that were known to the trial court at the time probation was originally granted.").

was properly or wrongfully discharged from the treatment facility, he "knew what was expected of [him]" and deliberately absconded. Speaking to Defendant, the court expressly considered whether to "revoke you in full . . . or give you another chance and put you back on probation or [into] some kind of treatment facility."[6] Ultimately, the court emphasized the lack of success in giving Defendant multiple chances to comply with the terms of probation in the past and the seriousness of his deliberate failure to report back to jail in choosing to order Defendant to serve his sentence in incarceration.

Moreover, the opinion of the Court of Criminal Appeals indicates that the appellate court properly reviewed the trial court's decision. The intermediate court's opinion, however brief, shows—though not explicitly—that the court considered the consequence imposed for Defendant's probation violation as a separate discretionary decision of the trial court. We recognize that the Court of Criminal Appeals did not mention a "two-step" process like the trial court did in its oral findings. Nor did the court use the "separate exercise of discretion language" that this Court would prefer. Even so, the majority opinion listed its reasons for agreeing with the propriety of the consequence imposed by the trial court. In addition, Judge Easter's concurring opinion, which stated that the trial court is not statutorily required to conduct an additional hearing or make additional findings after determining that a probation violation has occurred, suggests that the panel considered more than just the trial court's finding that a violation occurred.

The appellate court noted and, after our thorough review, we agree that there was "overwhelming evidence to support the trial court's decision to fully revoke probation." *Dagnan*, 2021 WL 289010, at *3. Giving a presumption of reasonableness to the trial court's decision choosing one of the statutory options available to it, we agree with the Court of Criminal Appeals' conclusion that the trial court did not abuse its discretion in fully revoking Defendant's probation.[7]

### III. CONCLUSION

---

[6] Defendant emphasizes the fact that the director of Freedom House Ministries allegedly did not have the authority to discharge him from the program. He argues that neither the trial court nor the Court of Criminal Appeals gave proper weight to the fact that he was wrongfully discharged from the program and that he had been accepted to another program. However, regardless of whether Defendant was properly or wrongfully discharged, he failed to report back to jail as he was obligated to do. Neither court erred in putting greater emphasis on the fact of Defendant's failure to return to jail.

[7] Defendant makes much of the trial court's "no choice" language in its oral findings, recited above. We, however, do not take these words literally. Of course, the trial court understood that it did have a choice on whether or not to revoke Defendant's probation. The court stated as much in its oral findings. It appears to us that the court was speaking figuratively about its perceived lack of options because of Defendant's inability or unwillingness to comply with the terms of his probation.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in revoking Defendant's probation and ordering him to serve the balance of his six-year sentence in incarceration. We further hold that the standard of review for probation revocations is abuse of discretion with a presumption of reasonableness as long as the trial court has properly placed its findings on the record. Accordingly, we affirm the decision of the Court of Criminal Appeals.

It appearing that Defendant, Craig Dagnan, is indigent, costs of this appeal are taxed to the State of Tennessee.

_____
ROGER A. PAGE, CHIEF JUSTICE