IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 22, 2024

## STATE OF TENNESSEE v. NATHANIEL SCOTT ROBINSON

**Appeal from the Criminal Court for Knox County**
**No. 116588          Steven Wayne Sword, Judge**

_____

**No. E2024-00176-CCA-R3-CD**

_____

The Defendant, Nathaniel Scott Robinson, pled guilty to the offense of statutory rape, and the trial court sentenced him to a term of six years. The court suspended the sentence and placed the Defendant on probation. Thereafter, the Defendant was charged with possession of cocaine for resale. After a hearing, the trial court revoked the suspended sentence and ordered the Defendant to serve the six-year sentence in custody. On appeal, the Defendant argues that the trial court should have considered alternatives to fully revoking his suspended sentence. Upon our review, we respectfully affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JILL BARTEE AYERS and KYLE A. HIXSON, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Nathaniel Scott Robinson.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Jeannine Guzolek, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

On May 7, 2021, the Defendant pled guilty to the offense of statutory rape. Pursuant to the plea agreement, the trial court sentenced the Defendant as a career offender to a term

of six years.  The court also suspended the sentence and placed the Defendant on probation. Among other things, the court conditioned the Defendant's probation on his not violating "any of the laws of any city, state or of the United States or being guilty of any misconduct inconsistent with good citizenship."

On September 29, 2023, officers filed a probation violation warrant alleging that the Defendant had been arrested for unlawful possession of a firearm and controlled substances.  The trial court held a hearing on January 5, 2024.

At the hearing, Sergeant Robert Cheatham of the Knox County Sheriff's Office testified that he participated as a liaison to the FBI in executing a search warrant on Meadow View Road in Knox County, Tennessee.  Two individuals, the Defendant and Terry Grove, were present at the residence.  Officers observed the Defendant leaving a room where they found his identification, a small baggie of cocaine, and other baggies beside the bed.  Based on its packaging, Sergeant Cheatham believed the cocaine was intended for resale.  In other areas of the house, officers recovered drugs, cash, and a firearm.

The Defendant called his brother, Dion Robinson, to testify.  Mr. Robinson stated that he had lived at the residence for three years with his son, Mr. Grove, and that the Defendant had been staying with them for about a month before the search.  Although he was not home during the search, Mr. Robinson testified that the drugs found in the house, including eighteen or nineteen ounces of cocaine and three or four pounds of marijuana, were his.  He also testified that the firearms recovered from the residence belonged to his son.  He said that his son and brother occupied separate bedrooms in the house.

After the hearing, the trial court found that the evidence did not support a finding that the Defendant possessed a firearm, concluding that the weapons likely belonged to Mr. Grove.  However, the court found that the Defendant violated the terms of his probation by being in possession of cocaine for resale.  In considering the consequence of the violation, the trial court considered the Defendant's nine previous convictions dating back to 1985 and noted that he is a career offender.  It considered that many of these convictions involved drug-related offenses and that the Defendant committed a new felony offense while being on probation for a felony.  The trial court then revoked the suspended sentence and ordered that the Defendant serve his six-year sentence in custody.

The Defendant filed a timely notice of appeal.[1]

---

[1]     Although an appealing party has thirty days to file a notice of appeal "after the date of entry of the judgment appealed from," Tenn. R. App. P. 4(a), the Defendant filed his notice of appeal on February 5, 2024, or 31 days after the revocation order was entered.  However, because the thirtieth day was a Sunday,

2

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.* In this case, because the trial court placed sufficient findings on the record to support its decisions regarding the violation and consequence determinations, we review those decisions for an abuse of discretion.

## ANALYSIS

In this appeal, the Defendant argues that the trial court abused its discretion in ordering that he serve his sentence as a consequence of the probation violation. More specifically, he asserts that the trial court failed to give sufficient reasons for the revocation and did not consider alternatives to incarceration. The State responds that the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We agree with the State.

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also require that the defendant comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or to protect the safety of the community and individuals in it. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of probation sentence, however, 'is [the] rehabilitation of the defendant,' . . . and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-28-302(1) (2018).

---

the Defendant's notice of appeal, which was filed the next day, was timely. *See* Tenn. R. App. P. 21(a); *State v. Bryant*, No. M2022-00260-CCA-R3-CD, 2023 WL 2783171, at *14 (Tenn. Crim. App. Apr. 5, 2023) ("[B]ecause the thirtieth day fell on a Sunday, Defendant had until Monday, February 28, 2022, to file a timely notice of appeal."), *no perm. app. filed*.

As long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (Supp. 2021). As such, the nature of a probation revocation proceeding involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. As our supreme court confirmed in *Dagnan*, the first step is to determine whether the defendant has violated a condition of probation, and the second is to determine the appropriate consequence of that violation. *Id.*

## A. THE VIOLATION DETERMINATION

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). "[C]ompliance with our state laws is an automatic condition of a suspended sentence, and when a trial court learns that a defendant has violated the law, it has the power to initiate revocation proceedings." *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997).

As this court has recognized in the context of felony probation, "The probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both." *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022) (citing Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021)). In felony probation cases, a trial court's authority to revoke probation fully for criminal conduct is generally limited to non-technical violations, or those consisting of new felonies or Class A misdemeanor offenses. *See State v. Woodruff*, No. W2023-01446-CCA-R3-CD, 2024 WL 2874583, at *5 (Tenn. Crim. App. June 7, 2024), *no perm. app. filed*; Tenn. Code Ann. § 40-35-311(g) (Supp. 2022).

In this case, the Defendant was on probation for a felony conviction, and the court found that the Defendant committed a new felony offense involving possession of a controlled substance for resale. The Defendant does not challenge on appeal that he violated the conditions of his probation through new criminal conduct. As such, we conclude that the record supports a finding that the Defendant committed a non-technical violation of probation.

4

## B.     THE CONSEQUENCE DETERMINATION

As to the second step, "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Rand*, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024) (citation and internal quotation marks omitted). As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan*, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code Ann. § 40-35-102(3)(C) (2019); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. A trial court may also consider whether the violation shows that the defendant is a danger to the community or individuals in it. Tenn. Code Ann. § 40-28-302(1) ("Supervised individuals shall be subject to: (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large and cannot be appropriately managed in the community[.]").

In this case, the Defendant argues that the trial court failed to identify sufficient reasons for its revocation decision and failed to consider alternative sentences to incarceration. We respectfully disagree. Importantly, "[i]t is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Dagnan*, 641 S.W.3d at 759. In our review of the trial court's announcement, it is clear that the trial court's consequence determination relied upon two reasons in particular.

First, the trial court considered the nature and seriousness of the present violation. This was a proper consideration for the trial court and one expressly authorized by *Dagnan*. *See Dagnan*, 641 S.W.3d at 759 n.5. Importantly, the Public Safety Act of 2016 permits trial courts to consider whether a violating probationer can "remain compliant and crime-free in the community" as part of the consequence determination. Tenn. Code Ann. § 40-28-302(2). From this premise, this court has also observed that "[t]he rehabilitative goals of probation are directed precisely toward the goal of lawful conduct and public safety. Thus, this [c]ourt has long recognized that where the probationer continues to commit new crimes, the beneficial aspects of probation are not being served." *State v. Everett*, No. E2022-00189-CCA-R3-CD, 2022 WL 16643628, at *4 (Tenn. Crim. App. Nov. 3, 2022) (citation omitted), *no perm. app. filed*.

The trial court specifically found that the Defendant committed a new felony offense while on probation for a felony. We agree and observe again that "[t]he seriousness of the violation only increases when the probationer continues to commit new felony offenses while on probation for a felony." *Everett*, 2022 WL 16643628, at *4; *State v. Thompson*, No. M2023-01424-CCA-R3-CD, 2024 WL 3549189, at *3 (Tenn. Crim. App. July 26, 2024) (same), *no perm. app. filed*.

Second, the trial court considered the Defendant's lengthy criminal record in the context of previous attempts at rehabilitation. Again, this was a proper consideration for the trial court and one also expressly authorized by *Dagnan*. *See Dagnan*, 641 S.W.3d at 759 n.5. The trial court acknowledged that the Defendant has nine felony convictions and is a career offender. However, the court did not merely rely upon the Defendant's extensive criminal record. Instead, the court also identified the nature of the convictions, noting that many involved drug-related offenses, and it considered the time over which the convictions have occurred, some forty years. In this way, the trial court examined the extent, nature, and duration of the Defendant's history of criminal conduct in deciding that a full revocation was an appropriate consequence of his violation.

The Defendant argues that the trial court did not consider "alternative sentences" to incarceration when deciding upon an appropriate consequence of the violation. We respectfully disagree with this assertion that a trial court considering the consequence of a probation violation must consider "alternative sentences" as it would in the original sentencing decision. *See State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *4 (Tenn. Crim. App. July 11, 2022) ("Defendant's reliance on authority relevant to the denial of probation is misplaced regarding the revocation of probation. Once the trial court found that Defendant had violated his probation, the trial court was under no duty to presume that Defendant should be reinstated to probation or some other alternative sentence."), *no perm. app. filed*. On the contrary, we have repeated countless times "that an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

Instead, the real purpose of the consequence determination is to reexamine the original decision to suspend the sentence and, through the lens of a defendant's post-judgment conduct, examine whether community-based efforts can still be effective for rehabilitation and community safety. *See State v. Tobin*, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at *5 (Tenn. Crim. App. Jan. 9, 2023), *no perm. app. filed*. This is, in fact, the command of the Public Safety Act of 2016. That statute *requires* trial courts to consider revocation when the probationer's risks "cannot be appropriately managed in the community." Tenn. Code Ann. § 40-28-302. Indeed, the trial court may only consider sanctions other than revocation when interventions exist that "may assist the offender to remain compliant and crime-free in the community." *Id.* In this way, the consequence

6

determination "is not merely focused on the probationer's rehabilitative needs alone." *State v. Banning*, No. E2022-00188-CCA-R3-CD, 2022 WL 10225186, at \*5 (Tenn. Crim. App. Oct. 18, 2022), *no perm. app. filed*. Instead, the determination must necessarily consider whether those needs "can be effectively addressed *in the community* rather than in custody." *Id.* (emphasis in original); *Tobin*, 2023 WL 176108, at \*5.

The record fully supports the trial court's decision to order incarceration rather than additional community-based interventions. While he was on probation meant for his rehabilitation, the Defendant, a career offender, chose instead to continue committing a new felony drug offense. When seen in the light of his long history of criminal conduct, the Defendant's new felony violation shows that he "has a complete disregard for the rehabilitative process and the orders of the court." *Everett*, 2022 WL 16643628, at \*4. We conclude that the trial court acted within its discretion in deciding that a full revocation of the Defendant's suspended sentence was the appropriate consequence of his violation.

## CONCLUSION

In summary, we hold that the record supports the trial court's finding that the Defendant committed a non-technical violation of his probation through his new felony conduct. We also hold that the trial court acted within its discretion to fully revoke the Defendant's suspended sentence as a consequence of that violation. Accordingly, we respectfully affirm the judgment of the trial court.

_____
TOM GREENHOLTZ, JUDGE