IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs September 27, 2022

**STATE OF TENNESSEE v. TANYA DAWN EVERETT**

**Appeal from the Circuit Court for Blount County**
**No. C-22411  David Reed Duggan, Judge**

_____

**No. E2022-00189-CCA-R3-CD**

_____

Following a conviction for theft of property, the Defendant, Tanya Dawn Everett, was sentenced to a term of four years and placed on probation.  Thereafter, the Blount County Circuit Court found that the Defendant violated the terms of her probation by failing to report and by committing new criminal offenses.  As a consequence, the trial court revoked the suspended sentence and ordered the Defendant to serve the balance of her original sentence in custody.  On appeal, the Defendant argues that the trial court abused its discretion by ordering her to serve the balance of her sentence in confinement.  We respectfully affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., P.J., and CAMILLE R. MCMULLEN, J., joined.

J. Liddell Kirk, Madisonville, Tennessee (on appeal), and Mack Garner, Maryville, Tennessee (at hearing), for the appellant, Tanya Dawn Everett.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Mike Flynn, District Attorney General; and Tracy Jenkins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# FACTUAL BACKGROUND

On August 11, 2014, the Defendant pled guilty to the offense of theft of property as a Class D felony. The Blount County Circuit Court sentenced her to a term of four years, but it suspended the sentence and placed the Defendant on probation.

On August 24, 2015, and again on June 22, 2018, the trial court found the Defendant to be in material violation of her probation. For the first violation, the court ordered the Defendant to serve 210 days before returning to supervised probation. For the second violation, the trial court ordered her to serve 80 days before returning to supervised probation, and it extended the Defendant's probationary period by one year. On August 6, 2018, the trial court issued a third probation violation warrant alleging that the Defendant had failed to report to her probation officer, and the Defendant remained out of contact until she was arrested more than three years later on November 29, 2021.

Following the Defendant's arrest, the Blount County Circuit Court held a revocation hearing on the third warrant on January 24, 2022. At this hearing, the Defendant stipulated to violating her probation by failing to report to her probation officer since July 3, 2018, and the State called Deputy Jarred Pekala of the Blount County Sheriff's Office to testify about the Defendant's arrest.[1]

Deputy Pekala testified that while he was on routine patrol on November 29, 2021, he pulled over a vehicle wherein Defendant was a passenger. When Deputy Pekala asked for the identification of all the vehicle's occupants, the Defendant gave him a false name and insisted that she could not remember her complete social security number.

After searching the vehicle, Deputy Pekala discovered a cigarette pouch containing heroin next to where the Defendant was sitting. As Deputy Pekala attempted to identify the Defendant, she continually alleged that her son, suffering from cerebral palsy and for whom she was the sole caregiver, was alone in her trailer. Deputy Pekala later discovered that, although the Defendant did have a son suffering from cerebral palsy, the son was in a different state with another caretaker.

After the State concluded its proof with Deputy Pekala, the Defendant testified on her own behalf. She confirmed that she had previously violated the terms of her probation

---

[1] The State did not call the Defendant's probation officer, Bruce Paulson, because he was under quarantine for COVID-19.

by possessing drug paraphernalia and was sentenced to serve time in custody. Upon her release from her previous violation, she reported to her probation officer and "stayed clean" for a few weeks. The Defendant testified that she passed her initial drug screens, but her probation officer announced that he would be "violating" her probation after he believed that she "masked" a drug screen. After this encounter, the Defendant stopped reporting to her probation officer because she believed that she "didn't have [any] other date to report to."

The Defendant denied knowing there was heroin in her cigarette pouch and denied telling Detective Pekala that her son had cerebral palsy. The Defendant admitted that she was not able to stay clean after she stopped reporting, and she asked the court to extend her probation by a year and "give [her] one more chance and let her get help."

On cross-examination, the Defendant admitted that she had fourteen prior felony convictions and that she had served a total of 290 days on her prior two violations. When she was asked whether she stopped reporting due to the arrest warrant, the Defendant replied, "Yeah, I don't think you're supposed to report once they tell you there's a warrant." When the prosecutor pushed her further on this subject, she replied, "They never came to my house. And I thought it was weird, but you know I was on my knees praying too. But usually the ink on the warrant isn't dry until they're stopping in my driveway and, you know, getting me."

Based upon the Defendant's stipulation and the testimony elicited at the hearing, the trial court announced its decision as follows:

> The Court finds upon this proof that she has engaged – the Defendant has engaged in a material violation of her terms of probation based upon failing to report, which has been stipulated to since July 3. And the Court also finds that the State has carried its burden of proof by a preponderance of the evidence that on November 29th she committed the offenses of false report, simple possession, and criminal impersonation. False report is a felony. She also has two priors. So the ruling of the Court will be that her probation is revoked[,] and she'll be ordered to serve her sentence.

Thereafter, the Defendant filed a timely notice of appeal, arguing that the trial court abused its discretion by ordering that she serve the balance of her sentence. We affirm the trial court's judgment.

**STANDARD OF APPELLATE REVIEW**

Our Supreme Court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, No. E2020-00231-SC-R11-CD, 2022 WL 4137238, at *4 (Tenn. Sept. 13, 2022). The principal issue in this case is whether the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this Court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.*

In *Dagnan*, our Supreme Court was clear that, while a trial court's findings need not "be particularly lengthy or detailed," they must be "sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id.* at 757-59. With that principle in mind, it may be a close question, respectfully, as to whether the trial court's findings here allow us to conduct meaningful appellate review, such that an abuse-of-discretion standard applies.

That said, we note that both parties agree that we should review the trial court's decision for an abuse of discretion. It is also clear that the trial court's consideration of the issues complied with *Dagnan*'s two-step framework, and the court did not simply rely upon the fact of a current violation as the reason to revoke the Defendant's suspended sentence. In similar cases, we have reviewed revocation decisions for an abuse of discretion. *See State v. Taylor*, No. M2021-00954-CCA-R3-CD, 2022 WL 1413588, at *2 (Tenn. Crim. App. May 4, 2022) (applying abuse-of-discretion review when the trial court considered the prior violations of probation); *State v. Gibbs*, No. M2021-00933-CCA-R3-CD, 2022 WL 1146294, at *7 (Tenn. Crim. App. Apr. 19, 2022) (applying abuse-of-discretion review when the trial court "considered more than just the finding of a violation," despite the trial court only considering the deliberate intent not to report or comply with reporting obligations). For these reasons, we review the lower court's decision for an abuse of discretion.

# ANALYSIS

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant upon probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also require such a defendant to comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or to protect the safety of the community and individuals in it. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of probation sentence, however, 'is rehabilitation of the defendant,' and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996); Tenn. Code Ann. § 40-28-302(1)).

So long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999); *State v. Moses*, No. W2016-01762-CCA-R3-CD, 2018 WL 2292998, at *4 (Tenn. Crim. App. May 18, 2018) (holding that a defendant's probation may not be revoked for conduct that does not violate a condition of probation). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (2021).

As such, the nature of a probation revocation proceeding naturally involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. As our Supreme Court confirmed in *Dagnan*, the "first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Id.*

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005); Tenn. Code Ann. § 40-35-311(d)(1). Where a defendant admits that he or she violated a condition of probation, the trial court may properly find that a violation exists. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999); *see also, e.g.*, *State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *4 (Tenn. Crim. App. July 11, 2022). Because the Defendant does not challenge the trial court's decision as to this first step, we affirm the trial court's finding that the Defendant committed a violation of probation.

As to the second step, the consequence determination essentially examines whether the beneficial goals of probation are being realized and whether the defendant remains an

appropriate candidate for probation.  As the Supreme Court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation.  *See Dagnan,* 641 S.W.3d at 759 n.5.  Factors important to this last consideration may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court to ensure his or her effective rehabilitation.  *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022); Tenn. Code Ann. § 40-35-102(3)(C).  Trial courts may also consider whether the violation shows that the defendant is a danger to the community or individuals in it.  Tenn. Code Ann. § 40-28-302(1) ("Supervised individuals shall be subject to: (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large and cannot be appropriately managed in the community[.]").

In this case, the trial court found that the appropriate consequence of the Defendant's violations was the full revocation of her sentence.  The Defendant argues that the trial court abused its discretion in this second step by not ordering a period of split confinement and substance-use treatment.  Conversely, the State argues that the trial court acted within its discretion by fully revoking the Defendant's probation.  We agree with the State and conclude that the trial court appropriately considered and weighed the factors suggested by *Dagnan*.

### A.    SERIOUSNESS OF THE VIOLATIONS

The trial court first considered the seriousness of the established violations.  With respect to the Defendant's new criminal conduct, the trial court found that the Defendant committed three separate criminal offenses and that one of the offenses was a felony.  These were appropriate considerations.  The rehabilitative goals of probation are directed precisely toward the goal of lawful conduct and public safety.  Thus, this Court has long recognized that where the probationer continues to commit new crimes, the beneficial aspects of probation are not being served. *State v. Covington*, No. E2019-00359-CCA-R3-CD, 2020 WL 2560933, at *4 (Tenn. Crim. App. May 20, 2020) (observing that the "Defendant's 'continued criminal conduct' while on probation indicated that 'the beneficial aspects of probation [we]re no longer being served'").  The seriousness of the violation only increases when the probationer continues to commit new felony offenses while on probation for a felony.

With respect to the Defendant's failure to report, the trial court specifically noted that the Defendant had failed to report to her probation officer from July 3, 2018, through her arrest on November 29, 2021—a period of more than three years. This also was an appropriate consideration. Because supervision may be important to aid a probationer's rehabilitation and to protect public safety, a probationer's failure to voluntarily comply with supervision may reflect poorly on the probationer's "suitability for further probationary efforts." *State v. Chatman*, No. E2000-03123-CCA-R3-CD, 2001 WL 1173895, at *2 (Tenn. Crim. App. Oct. 5, 2001). Moreover, the intentionality of an absconsion is relevant to whether the probationer is willing to engage in rehabilitative efforts. *See State v. Gibbs*, No. M2021-00933-CCA-R3-CD, 2022 WL 1146294, at *7 (Tenn. Crim. App. Apr. 19, 2022) (affirming full revocation of a sentence for failure to report when probationer willfully failed to call and maintain contact with community corrections officer). Indeed, a sustained period of absconsion can show that the probationer has a complete disregard for the rehabilitative process and the orders of the court. The trial court did not abuse its discretion by considering these factors.

## B.     PRIOR VIOLATIONS

The trial court also considered that the Defendant had twice violated the conditions of her probation before committing the instant violations. This was an appropriate consideration. In *Dagnan*, our Supreme Court specifically referenced this factor as part of the consequence determination. *Dagnan*, 641 S.W.3d at 759 n.5. We have also recognized that prior violations may show that the defendant has poor potential for rehabilitation and is unwilling to engage in rehabilitative efforts. *See, e.g.*, *State v. Smartt*, No. E2021-00125-CCA-R3-CD, 2021 WL 6143735, at *10 (Tenn. Crim. App. Dec. 30, 2021) ("[T]he trial court did not err by considering the defendant's history of supervision when determining that he should serve the balance of his sentences in confinement. The record establishes that the defendant was either unwilling or unable to successfully complete a sentence involving release into the community."); *State v. Skettini*, No. E2017-02468-CCA-R3-CD, 2018 WL 3471150, at *2 (Tenn. Crim. App. July 18, 2018) ("In addition, the Defendant had three prior probation violations for which he received sentences alternative to incarceration. Given the Defendant's history, his testimony, and the testimony of his probation officer, it is evident that the Defendant has little regard for the probation conditions imposed."); *State v. Cook*, No. E2013-01563-CCA-R3-CD, 2014 WL 265789, at *3 (Tenn. Crim. App. Jan. 23, 2014) ("[T]he appellant's repeated violations [on a fourth violation] and continued drug use indicate that he has poor potential for rehabilitation."). The trial court did not abuse its discretion by considering this factor.

**CONCLUSION**

In summary, we hold that the trial court properly exercised its discretion in ordering the Defendant to serve her original sentence as a consequence of her probation violations. The trial court considered the seriousness of the violations consisting of new criminal conduct, including a felony offense, and her lengthy absconsion from supervision. It also considered the Defendant's prior history on probation and her two prior violations of probation. Because these considerations were fully consistent with the Supreme Court's decision in *Dagnan*, we respectfully affirm the trial court's judgment.

_____

TOM GREENHOLTZ, JUDGE