IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 9, 2022

## STATE OF TENNESSEE v. GREGORY SEAN ROBINSON

**Appeal from the Circuit Court for Montgomery County**
**Nos. 2007-CR-878, 40700811     William R. Goodman, III, Judge**

_____

### No. M2022-00248-CCA-R3-CD

_____

Following two convictions for aggravated assault, the Defendant, Gregory Sean Robinson, was sentenced to an effective term of ten years and placed on probation. Thereafter, the Defendant absconded from supervision and committed new criminal offenses. As a consequence, the trial court revoked the suspended sentences and ordered that the Defendant serve the balance of the effective sentence in custody. On appeal, the Defendant contends the trial court abused its discretion by revoking his suspended sentences in full instead of allowing him to participate in a substance-use treatment program through a furlough. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory D. Smith (on appeal) and Jacob W. Fendley (at hearing), Clarksville, Tennessee, for the appellant, Gregory Sean Robinson.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Robert J. Nash, District Attorney General; and R. Allan Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# FACTUAL BACKGROUND

In April 2008, the Defendant entered a plea of guilty in the Montgomery County Circuit Court to two counts of aggravated assault. The trial court imposed a sentence of five years for each count, and it placed the Defendant on probation. The court also ordered that the sentences be served consecutively for an effective sentence of ten years and that this effective ten-year sentence be served consecutively to a prior eight-year sentence.

By 2017, all sentences had expired except for the final five-year sentence. On June 9, 2017, the probation officer filed a violation report alleging that the Defendant had engaged in new criminal conduct while on probation, including unlawful possession of a firearm, theft of property, and unlawful substance possession. The trial court issued a violation of probation warrant, and the Defendant was brought into custody. The trial court allowed the Defendant to be released on bail pending a hearing, and it set a court date for April 9, 2018.

The Defendant did not appear on April 9, 2018, and the trial court issued a capias for the Defendant's arrest. The Defendant was not arrested on this warrant until February 4, 2021, nearly three years later. After the Defendant's arrest, his probation officer filed a second violation report alleging that the Defendant had absconded from supervision and had committed additional criminal offenses during the absconsion. More specifically, the probation officer alleged that the Defendant had been arrested on February 4, 2021, on charges of driving under the influence of an intoxicant, unlawful possession of a firearm, unlawful possession of a controlled substance, and traffic offenses.

On December 15, 2021, the Defendant, who was still in custody awaiting a hearing, filed a motion requesting that he be furloughed to an in-patient program for substance-use treatment. The trial court deferred its consideration of the motion to the violation hearing, which the court conducted on January 28, 2022.

At the violation hearing, the Defendant conceded to several violations, including driving under the influence of an intoxicant in 2021, unlawfully possessing controlled substances in 2017, and absconding from supervision "for a period of time." The Defendant denied, however, that he unlawfully possessed a firearm either in 2017 or in 2021.

The State then proceeded to call its witnesses to establish the firearms violations. It first called to testify Officer Brandon Hendrix of the Clarksville Police Department. The officer testified that he stopped the Defendant's car in 2017 after the Defendant entered the officer's lane of travel. After the stop, the officer asked the Defendant to step out of the

car, and he conducted a consent search of the Defendant. The officer found Alprazolam pills in the Defendant's pocket, and, after asking the Defendant to perform field sobriety tests, the officer searched the Defendant's car. The officer's search found marijuana and a gun in the back passenger's side floorboard underneath a jacket. The officer admitted that neither the Defendant nor his passenger claimed the gun and that no other evidence linked the gun to the Defendant other than "his proximity."

The State next called to testify Officer Logan Oakley with the Clarksville Police Department. Officer Oakley testified that on February 3, 2021, he and his partner responded to "a call for service" in which a car was stopped at an intersection. As Officer Oakley approached the car, he observed that the driver, who was the Defendant, was unconscious in the car. After waking the Defendant, the officer asked the Defendant to unlock the door and step from the car. When the Defendant opened the door, the officer smelled marijuana and observed a black handgun under the Defendant's feet on the driver's side floorboard. The officer then placed the Defendant in handcuffs and, after searching the Defendant, found "suspected marijuana, cocaine, and some green rectangular pills."

After the State rested, the Defendant first called Mr. Norris Bagby, who testified that he had known the Defendant for twelve to fifteen years. He recalled that on February 3, 2021, the Defendant picked him up, and they went to a bar in Clarksville. After playing pool for a few hours, they left the bar, and, because the Defendant was intoxicated, Mr. Bagby drove the Defendant's car with the Defendant in the passenger seat. Mr. Bagby insisted that he had his firearm with him that night and that he placed it on the driver's side floorboard.

Mr. Bagby testified that he was driving back to his house when he hit a mailbox. He stopped the car and tried to wake the Defendant, who was "in and out," to inform the Defendant about what happened. Mr. Bagby then got out of the car to look for damage to the car. But, as he did so, the Defendant woke up, got into the driver's seat, and drove away, leaving Mr. Bagby behind.

Finally, the Defendant testified. The Defendant testified that he was the father of eight children, with his youngest child being about two years old at the time of the hearing, and he said that he was "trying to change [his] life for them." The Defendant stated that he struggled with addiction and that his charges have "always been drug related." He noted that he had never participated in a treatment program, though he had asked for an opportunity.

The Defendant testified that he had been shot previously and that he suffered from post-traumatic stress disorder. He stated that the substances found by the officers were

- 3 -

"another form" of the medicine used to treat his condition and that the day of his arrest was a "full self-medication day."

When asked why he deserved "another chance" on probation, the Defendant testified that he wanted to be with his children. He said that he wanted to be a "role model" for his children and to "give them the best version of [himself]." He also testified that he wanted to be a mentor for other people suffering with substance-use addiction. He denied that he was simply trying to avoid prison, and he told the trial court that he wanted "to better [his] situation."

On cross-examination, the Defendant admitted that he missed a court date, but he said that he did not appear because he spoke with his lawyer. He testified that his lawyer told him that the lawyer would get his probation "terminated" or dismissed and that he did not show back up to court because he believed he no longer had any pending cases. The Defendant also denied that he was aware of a probationary warrant.

Upon the conclusion of the proof, the trial court found that the Defendant violated the conditions of his probation, and it ordered that the Defendant serve the balance of his sentence in custody. The trial court noted that it was "all for rehabilitation," but it observed that the Defendant had been absent for two years and ten months without reporting to probation or seeking treatment and that the Defendant desired rehabilitation only after he was incarcerated. The trial court also denied the motion for a treatment furlough "given where we are right now[.]"

On January 28, 2022, the trial court entered a formal revocation order confirming its ruling, and the Defendant filed a timely notice of appeal. In this appeal, the Defendant argues that the trial court erred by revoking his suspended sentences in full instead of allowing him to participate in a substance-use treatment program through a furlough. We respectfully disagree and affirm the judgment of the trial court.

**STANDARD OF APPELLATE REVIEW**

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this Court "may conduct a de

novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.*

## ANALYSIS

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also require that the defendant comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or to protect the safety of the community and individuals in it. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022), *no perm. app.* ("The primary purpose of probation sentence, however, 'is rehabilitation of the defendant,' and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))); *see also* Tenn. Code Ann. § 40-28-302(1).

So long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (2021). As such, the nature of a probation revocation proceeding involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. As our supreme court confirmed in *Dagnan*, the "first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Id.*

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Where a defendant admits that he or she violated a condition of probation, the trial court may properly find that a violation exists. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999); *see also, e.g.*, *State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *4 (Tenn. Crim. App. July 11, 2022), *no perm. app.* Because the Defendant stipulated to violating his probation by absconding, driving under the influence of an intoxicant, and unlawfully possessing controlled substances, we affirm the trial court's finding that the Defendant violated his probation conditions.

As to the second step, the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable

to continued probation. *State v. Banning*, No. E2022-00188-CCA-R3-CD, 2022 WL 10225186, at *3 (Tenn. Crim. App. Oct. 18, 2022); *see also State v. Fleming*, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *3 (Tenn. Crim. App. Dec. 26, 2018) ("[T]he trial court may review a defendant's past criminal history in order to determine, based on a totality of the circumstances, 'whether the beneficial aspects of probation [are] being served' and whether the defendant is amenable to continued probation."); *State v. Davis*, No. E2007-02882-CCA-R3-CD, 2008 WL 4682238, at *5 (Tenn. Crim. App. Oct. 23, 2008) (observing that the trial court "took a totality of the circumstances approach in order to decide whether the defendant's probation violations merited incarceration or another opportunity for rehabilitation. After doing so, the court determined that the defendant was not amenable to continued probation."). As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan,* 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code Ann. § 40-35-102(3)(C); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app.* A trial court may also consider whether the violation shows that the defendant is a danger to the community or individuals in it. Tenn. Code Ann. § 40-28-302(1) ("Supervised individuals shall be subject to: (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large and cannot be appropriately managed in the community[.]").

In this case, the trial court found that the appropriate consequence of the Defendant's violations was the full revocation of his suspended sentence. In denying the Defendant's request for release to a substance-use treatment program, the court considered the length of the Defendant's abscension. It also considered that, during the lengthy abscension, the Defendant failed to engage in any treatment on his own and repeatedly engaged in new criminal conduct. These factors were proper considerations as the trial court evaluated whether the Defendant was likely to obey future rehabilitative orders and whether additional opportunities for community-based treatment were appropriate. *See State v. Everett*, No. E2022-00189-CCA-R3-CD, 2022 WL 16643628, at *4 (Tenn. Crim. App. Nov. 3, 2022); *see also Owens*, 2022 WL 2387763, at *5; *State v. Nattress*, No. M2019-00408-CCA-R3-CD, 2019 WL 7049689, at *3 (Tenn. Crim. App. Dec. 20, 2019) (affirming full revocation of a suspended sentence for failure to report and failed drug screens when, in part, "the defendant failed to seek any help for his drug addiction").

Because each of these considerations was fully consistent with the supreme court's guidance in *Dagnan*, we affirm the trial court's judgment.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion in finding that the Defendant violated the terms and conditions of his suspended sentence. We also hold that the trial court acted within its discretion in revoking the Defendant's suspended sentence and ordering that he serve the balance of this sentence in the Department of Correction. We affirm the trial court's judgment.

_____
TOM GREENHOLTZ, JUDGE