IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2024

## STATE OF TENNESSEE v. RICHARD RAND, JR.

**Appeal from the Circuit Court for Sequatchie County**
No. 2021-CR-95     Bradley Sherman, Judge

———————————————————

### No. M2023-00845-CCA-R3-CD

———————————————————

The Defendant, Richard Rand, Jr., was convicted of the possession of methamphetamine with intent to sell or deliver. The trial court sentenced him to a term of four years on probation. Thereafter, the Defendant violated the terms of his probation by absconding from supervision. Following a hearing, the trial court revoked his suspended sentence in full and ordered the original sentence into execution. On appeal, the Defendant argues that his conduct amounted only to a technical failure to report rather than an abscosion. We respectfully disagree and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

Kyle Brooks Cokkinias, Dayton, Tennessee, for the appellant, Richard Rand, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Courtney Lynch, District Attorney General; and Steven H. Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

On December 9, 2021, the Defendant pled guilty to the offense of possession of methamphetamine with intent to sell or deliver as a Class C felony offense. The trial court

sentenced him to a term of four years, but suspended the sentence and placed him on probation to be supervised by the Tennessee Department of Correction ("the Department").

On October 13, 2022, the trial court entered an order finding that the Defendant violated the terms of his probation through new criminal conduct.[1] As a consequence of the violation, the court ordered the Defendant to serve twelve months and be released to Catoosa County, Georgia, to answer for charges in that jurisdiction.

On March 17, 2023, the Department filed a probation violation report alleging that the Defendant had absconded from supervision. In the report, the Department alleged that the Defendant had failed to report for supervision in Tennessee after being released from custody in Georgia. A warrant was issued five days later, and after the Defendant was apprehended, the trial court held a violation hearing on May 26, 2023.

At the hearing, the State called the Defendant's probation officer, Roger Dodson, to testify. Mr. Dodson stated that he started supervising the Defendant on December 9, 2021, and that since that time, the Defendant had been twice convicted of new criminal offenses. Mr. Dodson testified that the Defendant's probation was partially revoked for new criminal conduct in October 2022 and that the Defendant was released to Catoosa County, Georgia, to address pending charges there. Although the Defendant was released from custody in Georgia on January 26, 2023, he did not report for supervision in Tennessee after that.

Mr. Dodson also testified that he attempted to contact the Defendant at the last known address and telephone number. He said that he called the listed telephone numbers for the Defendant, but they were disconnected, and he could not leave a message. In addition, Mr. Dodson attempted to visit the Defendant's listed address, but the house was uninhabitable. The officer also ran a "CLEAR report" to find any new contact information for the Defendant. Ultimately, however, Mr. Dodson could not contact the Defendant and did not receive any contact from him before the Defendant's eventual arrest.

---

[1] From the transcript of the later revocation hearing, this new criminal conduct appears to have involved felonious possession of fentanyl, and the sentence in this new case, No. 22-CR-106, was aligned consecutively to the original case, No. 2021-CR-95. The new case was not listed on the original violation report that is the subject of this appeal, but it was later included without objection at the hearing. Although the sentences in both the original and new cases were revoked in full at the revocation hearing, the Defendant's notice of appeal included only the original case. Indeed, the appellate record contains no information related to the new case, such as judgments, an amended violation report, or revocation judgment. As such, our opinion in this case reviews only the revocation of the sentence in the original case, No. 2021-CR-95, as it is the only case properly before the court. *Cf.* Tenn. R. App. P. 3(f) (requiring that "[t]he notice of appeal . . . shall designate the judgment from which relief is sought").

2

The Defendant's wife, Ms. Angel Rand, testified that she had recently married the Defendant. She worked as an assistant manager at a local restaurant that could offer the Defendant employment if he were to be released from custody. Ms. Rand confirmed that she was on probation being supervised by the same officer as the Defendant and that she was in contact with this officer when the Defendant returned from Tennessee. She testified that the Defendant was arrested about two weeks after his return to Tennessee.

The Defendant testified that he could not return to Tennessee after being released from custody in Georgia. He stated that he did not have a cell phone or transportation. The Defendant said that when he was finally able to return to Tennessee, he knew that he had violated his probation and "wasn't quite sure what to do." The Defendant also testified that, if he were released, he would have a place to live and possible employment.

After the testimony, the trial court found by a preponderance of the evidence that the Defendant violated the terms of his probation by absconding from supervision. The trial court also found that the Defendant had a criminal history involving probation and parole violations in other states. Further, the trial court found that the Defendant offered no satisfactory explanation about why he did not report to probation upon his return to Tennessee, although he could have reported to his probation officer with his wife. It also found that the instant violation was the second probation violation in this case and that the Defendant's probation history included new criminal conduct similar to his original criminal conduct. With these findings, the trial court noted that probation is not "the best fit for [the Defendant] at this point," and it ordered a full revocation of the Defendant's suspended sentence.

The trial court's revocation order was entered on May 26, 2023. The Defendant filed a timely notice of appeal with this court thirteen days later on June 8, 2023.

**STANDARD OF APPELLATE REVIEW**

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.* In this case, because the trial

3

court placed sufficient findings on the record to support its decisions regarding the violation and consequence determinations, we review those decisions for an abuse of discretion.

## ANALYSIS

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also require that the defendant comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or to protect the safety of the community and individuals in it. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of probation sentence, however, 'is [the] rehabilitation of the defendant,' . . . and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-28-302(1).

As long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (Supp. 2021). As such, the nature of a probation revocation proceeding involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. As our supreme court confirmed in *Dagnan*, the first step is to determine whether the defendant has violated a condition of probation, and the second is to determine the appropriate consequence of that violation. *Id.*

### A.    THE VIOLATION DETERMINATION

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Prior to 2021, trial courts possessed broad authority to revoke a defendant's suspended sentence for any violation of the terms and conditions of probation. Although probationers sometimes argued that "technical violations" should be sanctioned less severely, the law generally rejected distinctions between technical and non-technical violations. *See State v. Griffis*, No. 03C01-9708-CR-00358, 1998 WL 712702 (Tenn. Crim. App., filed at Knoxville, Oct. 13, 1998) ("[T]he appellant's argument that revocation is not proper because the violations were only technical in nature is clearly without merit. . . . In plain language, a violation irrespective of its nature remains a violation.").

4

Effective July 1, 2021, the General Assembly amended the statutes relating to violations of probation to institute a system of graduated sanctions for certain types of violations. In so doing, the legislature created two categories of violations, technical and non-technical violations, and it assigned different possible consequences to each category. *See* 2021 Tenn. Pub. Acts, ch. 409, §§ 24, 25 (eff. July 1, 2021); *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022) (citing Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021)). For example, when a defendant is on probation for a felony offense and commits a technical violation of probation, the trial court's authority to order an incarcerative sanction is restricted based on the number of previous "revocations." As such, a court may not order a felony probationer to serve the remainder of the sentence as the consequence of a technical violation until he or she is subject to a "fourth or subsequent revocation." Tenn. Code Ann. § 40-35-311(e)(1).

However, when any probationer commits a non-technical violation, a trial court's authority to impose a consequence for that violation is broad. Indeed, the trial court may fully revoke a suspended sentence for a non-technical violation, even if the probationer has not previously violated the terms and conditions of the suspended sentence. *See generally* Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021).

As the term is currently defined, a "technical violation" means "an act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." Tenn. Code Ann. § 40-35-311(g). As can be seen from this definition, a defendant who absconds commits a non-technical violation of probation and may be subject to a full revocation of the suspended sentence even without prior violations or revocations.

In this case, the trial court found that the Defendant violated the conditions of his probation by absconding from supervision. The Defendant argues that the trial court lacked the authority to fully revoke his sentence because his conduct amounted only to a technical failure to report and did not constitute an absconsion from probation. We respectfully disagree.

Although section 40-35-311 does not expressly define what acts "constitute absconding," this court has previously held that the term "to abscond" means "[t]o go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process. To hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process." *State v. Wakefield*, No. W2003-00892-CCA-R3-CD, 2003 WL 22848965, at *1 (Tenn. Crim. App. Nov. 25, 2003) (citing *Black's Law Dictionary* 8 (6th ed. 1990)), *no perm. app. filed*; *see also State v. Taylor*, No. E2023-00791-CCA-R3-CD,

2024 WL 1526109, at \*4 (Tenn. Crim. App. Apr. 9, 2024) (same); *State v. Munn*, No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at \*4 (Tenn. Crim. App. Mar. 23, 2023) (same), *no perm. app. filed*.

Thus, acts constituting absconding go beyond a single missed meeting where the probationer continues to report. Instead, as this court has defined the term, absconsion is an act defined by the probationer's intent to avoid supervision more generally. As such, circumstantial evidence from which a court may infer that a defendant has absconded from supervision can include the following considerations, among others:

- a probationer's failure to use reasonable efforts to inform the probation officer of a change in the probationer's contact information, residential address, or employment, *e.g.*, *State v. Mosby*, No. M2022-01070-CCA-R3-CD, 2024 WL 380100, at \*4 (Tenn. Crim. App. Feb. 1, 2024), *perm. app. filed* (Tenn. Apr. 1, 2024);

- the extent to which the probationer has failed to use reasonable efforts to return contact or submit to supervision after knowledge (or a belief) that supervision has been attempting to communicate with the probationer, *e.g.*, *Taylor*, 2024 WL 1526109, at \*5;

- statements by the probationer confirming that the probationer intentionally or knowingly avoided supervision, including statements that the probationer refrained from establishing contact for fear of a revocation or incarceration, *e.g.*, *State v. Tobin*, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at \*3 (Tenn. Crim. App. Jan. 9, 2023), *no perm. app. filed*;

- the extent to which the probationer has left or remained outside the jurisdiction of the trial court or the probation officer, Tenn. Code Ann. § 40-35-303(h);

- the degree to which the probationer has acted to avoid an arrest on a known or suspected violation warrant or court order to report, *e.g.*, *Dagnan*, 641 S.W.3d at 760 n.6;

- the extent to which the probationer has sought to evade arrest or misrepresent his or her identity when encountering law enforcement, *e.g.*, *State v. Bledsoe*, No. W1999-00072-CCA-R3-CD, 2000 WL 205045, at \*2 (Tenn. Crim. App. Feb. 10, 2000), *no perm. app. filed*;

- the length of time that the probationer has intentionally or knowingly remained out of contact with supervision, *e.g.*, *State v. Everett*, No. E2022-00189-CCA-R3-CD, 2022 WL 16643628, at *4 (Tenn. Crim. App. Nov. 3, 2022) (stating that "a sustained period of absconsion can show that the probationer has a complete disregard for the rehabilitative process and the orders of the court"), *no perm. app. filed*;[2] or

- the degree to which other violations support the inference that the probationer's hiding, concealment, or absence may be to avoid legal process or supervision.[3]

In this case, the trial court properly concluded that the Defendant absconded from supervision. The Defendant was released from custody in Georgia on January 26, 2023. After that time, he remained in Georgia for nearly two months, outside the jurisdiction of the court and his probation officer in Tennessee. Although he was aware of his obligation to contact his probation officer after his release, the Defendant did not inform his probation officer of his circumstances or otherwise attempt any contact.

When he returned to Tennessee in mid-March, the Defendant believed he had "been violated already." As such, for the next two weeks before his arrest, he did not notify his probation officer of his whereabouts, submit to supervision, or otherwise surrender himself to authorities. During the Defendant's absence, his probation officer attempted to contact him at the last known address and telephone number, but the contact information was no longer accurate.

---

[2] A trial court may infer a probationer's intent to hide or conceal to avoid supervision where he or she remains out of contact with supervision for lengthier periods. However, shorter periods are not necessarily dispositive of a probationer's intent to submit to supervision. For example, where the evidence shows that the probationer's hiding, concealment, or absence is quickly ended by arrest or other circumstances beyond the probationer's control, a court may still find an absconsion if other evidence shows that the probationer's actions were intended to avoid legal process or supervision.

[3] This may be particularly the case where the other violations, even if technical in nature, relate to conditions that also have a supervision component. One such example could be when the probationer hides after removing monitoring equipment or interfering with its operation. *See, e.g.*, *State v. Whitson*, No. E2019-02227-CCA-R3-CD, 2020 WL 6375599, at *2 (Tenn. Crim. App. Oct. 30, 2020), *no perm. app. filed*. In addition, a probationer's failure to report for, or prematurely leaving, a court-ordered treatment facility could be a circumstance from which a court may infer that the probationer's larger absence is intended to avoid supervision. *See, e.g.*, *State v. Jones*, No. E2008-01745-CCA-R3-CD, 2009 WL 2030423, at *4 (Tenn. Crim. App. July 14, 2009), *perm. app. denied* (Tenn. Dec. 21, 2009). And, perhaps obviously, a failure to report for supervision combined with a failure to report to jail to serve a sentence on weekends may be circumstantial evidence that the probationer's absence is for the purpose of avoiding legal process or supervision. *See, e.g.*, *State v. Scronce*, No. W2016-00066-CCA-R3-CD, 2016 WL 3563667, at *2 (Tenn. Crim. App. June 22, 2016), *no perm. app. filed*.

7

Respectfully, the Defendant's argument that his conduct amounted to a mere failure to report is without merit. Instead, a preponderance of the evidence in the record establishes that, even after returning to Tennessee, the Defendant intentionally or knowingly continued to conceal himself from authorities to avoid supervision or legal process. As such, we conclude that the trial court acted within its discretion to find that the Defendant committed a non-technical violation by absconding from supervision.

## B.    THE CONSEQUENCE DETERMINATION

As to the second step, "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023). As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan*, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code Ann. § 40-35-102(3)(C); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. A trial court may also consider whether the violation shows that the defendant is a danger to the community or individuals in it. Tenn. Code Ann. § 40-28-302(1) ("Supervised individuals shall be subject to: (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large and cannot be appropriately managed in the community[.]").

In this case, the Defendant does not contest the full revocation of his sentence apart from his assertion that the violation was technical in nature. However, because the Defendant committed a non-technical violation of probation, the full revocation of his suspended sentence was within the broad range of consequences that the trial court could properly consider. Without any other argument challenging the trial court's exercise of its discretion in this regard, we affirm its decision to fully revoke the Defendant's suspended sentence as a consequence of his absconding. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

8

## CONCLUSION

In summary, we hold that the record supports the trial court's finding that the Defendant absconded from supervision and committed a non-technical violation of his probation. We also hold that the trial court acted within its discretion to fully revoke the Defendant's suspended sentence as a consequence of that violation. Accordingly, we respectfully affirm the judgment of the trial court.

_____
TOM GREENHOLTZ, JUDGE