IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 24, 2025

**STATE OF TENNESSEE v. DANNY YOUNG**

**Appeal from the Criminal Court for Shelby County**
**No. 22-01953          Paula L. Skahan, Judge**
_____

**No. W2024-01664-CCA-R3-CD**
_____

Defendant, Danny Young, appeals the judgment of the Shelby County Criminal Court revoking his probation and ordering the execution of his original sentence. On appeal, Defendant argues that the trial court abused its discretion by failing to place on the record its reasons for revoking his probation and ordering him to serve his original sentence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and STEVEN W. SWORD, JJ., joined.

Phyllis Aluko, District Public Defender, Harry E. Sayle, III (on appeal), and Nick Cloud (at hearing), Assistant District Public Defenders, for the appellant, Danny Young.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Steve Mulroy, District Attorney General; and Matthew Blissett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Factual and Procedural Background

In March 2022, the Shelby County Grand Jury returned an indictment charging Defendant with aggravated child abuse. On March 22, 2023, Defendant pleaded guilty to the lesser-included offense of attempted aggravated child abuse, and the trial court sentenced him to four years, which it suspended to supervised probation.

On July 18, 2024, an affidavit of violation was filed against Defendant, alleging that he had violated several conditions of his probation between July 15, 2024, and July 17, 2024. One of the violations alleged Defendant committed the new crime of coercion of a witness, a Class D felony. The other alleged violations were that Defendant possessed ammunition, tested positive on a drug screen, possessed tetrahydrocannabinolic acid ("THCA") and paraphernalia, and failed to pay his probation fees. Defendant was arrested on the warrant for the violations on September 13, 2024, and the trial court held a revocation hearing on October 21, 2024, where the following evidence was presented.

On July 15, 2024, the Lebanon Police Department ("LPD") executed search warrants at the homes of Matthew Spurlock and Defendant as part of a methamphetamine trafficking investigation. During the search of Defendant's home, law enforcement seized $3,106 in cash (some of which had been used in previous controlled narcotics buys), cell phones, digital scales, plastic baggies, eight grams of THCA, a vacuum seal bag that contained methamphetamine residue, and other vacuum-seal bags commonly used in the packaging and transport of large amounts of narcotics. No methamphetamine was found at Mr. Spurlock's residence. Following the search of Mr. Spurlock's residence, LPD Investigator Kristopher Higgins provided Mr. Spurlock with his contact information.

The search of Defendant's residence resulted in narcotics charges being filed against him. Following the searches, the State and Mr. Spurlock entered into an agreement under which Mr. Spurlock agreed to testify against the Defendant in those matters.

Mr. Spurlock testified that he had known Defendant for approximately two years. He stated that they had worked together for about six months at FedEx in Mount Juliet and "had some other dealings," including Mr. Spurlock's purchasing Defendant's vehicle. According to Mr. Spurlock, Defendant came to his home to speak to him on July 17, 2024, between noon and early afternoon. The conversation took place in Defendant's car outside of Mr. Spurlock's home. Mr. Spurlock described Defendant as paranoid and wanting to find out who had provided law enforcement with the information which led to the searches. Defendant stated that they were "going to have to do something about that person." Mr. Spurlock testified that Defendant insinuated, "If it was [Mr. Spurlock] . . . it don't matter where I go or my family go . . . I'll be found or they'll be found." Defendant also said he "didn't want to go to jail" and warned Mr. Spurlock that he would "never make it to [Defendant's] trial." Mr. Spurlock stated that these comments made him fear for his life and the safety of his family. Mr. Spurlock confirmed that after the encounter with Defendant, he called Investigator Higgins.

Investigator Higgins testified that Mr. Spurlock called him and reported Defendant's threats. Investigator Higgins described Mr. Spurlock as "frantic" and "[k]ind of screaming

like in a way that he was . . . extremely upset about what had happened." Investigator Higgins stated that when he met with Mr. Spurlock in person, Mr. Spurlock was still "high strung . . . extremely nervous and scared." Mr. Spurlock told him that Defendant "had come to his house prior to his phone call . . . and made some threats to him in regards to the methamphetamine case."

Defendant testified that on July 17, 2024, he worked both a morning and an afternoon shift. He submitted what he claimed were screenshots of timecards showing that he worked from 5:32 a.m. to 8:39 a.m. and again from 12:05 p.m. to 1:08 p.m. Defendant stated that after work, he went to his uncle's house in Nashville, where he spent the night. He denied seeing or threatening Mr. Spurlock on that date. Defendant did, however, admit that the eight grams of THCA found at his residence belonged to him.

Following arguments from counsel, the trial court made its findings. The court noted that Defendant was placed on probation in March of 2023 after pleading guilty to attempted aggravated child abuse. The court observed that according to the probation violation reports submitted by the State, Defendant tested positive for THC in both April and September 2023. The court accredited the testimony of Mr. Spurlock. While the court did not find that the evidence substantiated the new crime violation of coercion of a witness, the court found Defendant's behavior to be "assaultive." The court further noted that the search of Defendant's house on July 15, 2024, resulted in the discovery of approximately $3,200 in cash, methamphetamine residue, and two scales consistent with the sale of narcotics. In addition, Defendant tested positive for THC the following day. The court stated that it was not "much concerned . . . with [the] ammunition and a magazine" found at Defendant's house but was "concerned with large amounts of cash being found in the residence . . . with a large baggy having methamphetamine residue . . . with marijuana," and smaller baggies for packaging. The court noted that the items were "indicative of drug trafficking." The court found "by a preponderance of the evidence that . . . the positive drug screens" and "all this combined," Defendant's "four years' probation is revoked."

## II. Analysis

Defendant argues that the trial court abused its discretion by failing to place on the record its reasons for revoking his probation and ordering him to serve his original sentence. The State argues that Defendant is not entitled to relief because the court acted within its discretion in revoking Defendant's probation and ordering the execution of his original sentence.

We consider the trial court's determination to revoke probation under a standard of "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the

consequence on the record." *See State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). Probation revocation is a two-step consideration in which the trial court makes two distinct determinations. *Id.* at 753. "The first is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *See id*. at 757. "[T]hese are two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." *Id.* at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." *Id.* at 758.

A trial court may revoke a defendant's probation upon a finding by a preponderance of the evidence that a defendant has violated the conditions of probation. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Addressing the consequences of the violation, this court has explained:

> Upon finding that a defendant has violated probation, the trial court may: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for remainder of the unexpired term to a sentence of probation.

*State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *3 (Tenn. Crim. App. July 11, 2022) (citing Tenn. Code Ann. §§ 40-35-308(c)(1), (2); -310; -311(e)(1), (2) (2021)).

First, we address the trial court's decision to revoke Defendant's probation. According to the court's findings, Defendant failed three drug screenings for THC and engaged in "assaultive" behavior, and a search of his residence uncovered ammunition, a firearm magazine, approximately $3,200 in cash, a vacuum sealed bag containing methamphetamine residue, other bags, and two digital scales—items the court found indicative of drug trafficking. Given all these findings, we conclude that the court did not abuse its discretion in revoking Defendant's probation. *See* Tenn. Code Ann. § 40-35-311(d)(1); *Beard*, 189 S.W.3d at 734-35.

Second, we address the trial court's decision ordering execution of Defendant's original sentence. Here, the trial court did not provide sufficient reasons for its decision ordering execution of Defendant's original sentence. After the court stated its findings in revoking Defendant's probation, the court announced the consequence thereof without further explanation. *See Dagnan*, 641 S.W.3d at 757-58 (stating that the determination to revoke probation and the consequence thereof are two distinct determinations). Hence, the ruling of the trial court is not entitled to a presumption of reasonableness, and the abuse of discretion standard is not appropriate. *See id.* at 759. Nonetheless, the court's factual

findings during the sentencing hearing and the adequacy of the record are sufficient to allow this court to review its decision de novo, rather than remand the case for reconsideration by the trial court. *See id.*; *State v. Blackwell*, No. M2020-01171-CCA-R3-CD, 2022 WL 16946493, at *4 (Tenn. Crim. App. Nov. 15, 2022).

In our de novo review, we conclude that the trial court's ordering the execution of Defendant's original sentence was appropriate in this case. Since being placed on probation for attempted aggravated child abuse, Defendant failed three screenings for drugs, engaged in assaultive behavior, and was found to be in possession of ammunition, a firearm magazine, eight grams of marijuana, $3,106 in cash (some of which had been used in previous controlled narcotics buys), cell phones, digital scales, a vacuum seal bag that contained methamphetamine residue, and other bags indicative of drug trafficking. The court found several of these items were indicative of Defendant's involvement in drug trafficking. Defendant's repeated failed drug screens and possession of items consistent with drug trafficking highlight his failure to "maintain lawful conduct" as consistent with the first rule of probation. *See State v. Tobin*, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at *4 (Tenn. Crim. App. Jan. 9, 2023) (recognizing that repeated criminal conduct of a similar nature "shows that the Defendant cannot or will not abide by the first rule of probation: maintaining lawful conduct." (citations omitted)). This court "has long recognized that where the probationer continues to commit new crimes, the beneficial aspects of probation are not being served." *State v. Robinson*, No. E2024-00176-CCA-R3-CD, 2024 WL 4554688, at *3 (Tenn. Crim. App. Nov. 3, 2022). Accordingly, under our de novo review, we agree with the trial court that the execution of Defendant's original sentence is the appropriate consequence for his multiple violations. Defendant is not entitled to relief.

## III. Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

_____ s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
